**266** NEW YORK PRACTICE REPORTS.

Quin agt. The Mayor, &c., of N. Y.

# SUPREME COURT.

## Denis Quin agt. The Mayor, Aldermen and Commonalty of the City of New York.

In an action against the *corporation of the City of New York* by a justice of a district court of that city for payment ot a balance of salary claimed to be due the justice, at the rate of $10,000 per year, and the answer of the defendants deny that the salary of the plaintiff was fixed at $10,000 per year, but allege that it was fixed by law at $5,000 per year, and offer to allow judgment at the latter rate ; On demurer to the answer, the question is, whether the salary of the plaintiff was lawfully fixed at $10,000, per year or at the lesser sum of $5,000.

This question is settled in favor of the plaintiff by showing that on the 31st of December, 1869, the common counsel passed an ordinance fixing the compensation of each of the *police justices* at $10,000 per year, and that compensation was thereafter paid to them at that rate, and was so paid when *ch.* 383 *of the Laws of* 1870 was enacted.

The latter enactment reads as follows "The: mayor and comptroller are hereby authorized to fix the salaries of the civil justices of the city of New York, or any or either of them, as they may deem the legal business of the respective districts to justify, not *exceeding the salary now paid to the police justices of said city.*

It is in vain to assert that the salary of the police justices had been unlawfully fixed at $10,000 per year. That is not the question ; but rather what was the sum *then paid* as such salary.

On the 21st of October, 1870, the mayor and comptroller in pursuance of the act of 1870 *ch.*, 383, fixed the salary of the plaintiff as such civil justice at $10,000 per year, and signed a ·certificate to authenticate such action. To this salary the plaintiff is entitled.

The second defense set up in the answer was that there was not money in the treasury of the city appropriated or applicable to the plaintiffs claim at the rate ot $10,000 per year.

The defendants rely upon *ch.* 583 *of the laws of* 1871, as supporting this defense. It is claimed that this act, commonly called the "two per cent act," limits the amount to be raised by the board of supervisors, by taxation for the year 1871, and that the board of apportionment, after providing for the principal and interest of certain bonds and the city's proportion of the state tax, shall apportion the remainder of such aggregate amount "to the various departments and purposes of the city and county governments" and that from the sum so raised, all the expenses of the city and county for all. their departments and ·purposes shall be paid, *and no* *liabilities shall be incurred for any purpose* in excess of such amount (§ 1–3).

That by said act the board of apportionment has power *to regulate the salaries of officers and employees of the city and county governments* (§ 3).

Also the 5th section of the same act is relied on which provides that "*no liability for any purpose whatsoever shall thereafter be incurred* by any department of the city of New York *or officers of the county of New York exceeding in amount* the appropriation made for such purpose; *nor shall the City and County of New York be held liable for any indebtedness so incurred.*

*Held*, 1st. that the civil justices are not attached to any of the "departments" of the city government; nor are they officers or employees of any of those departments, but still these civil justices are entitled by law to have their salaries paid by the city.

2d. When *ch.* 583 of the laws of 1871 was passed the salaries of these civil justices were fixed at $10,000 each per year, and if when the board of apportionment had made the appropriations thereunder for 1871, whether they exhausted all the fund at their disposal or not, they had allowed to the civil justices for their salaries but one-half of what they were entitled to receive, then it is clear that one-half the sums due the justices for their salaries would still be due to them above such appropriations. The act of 1871, was not intended to abrogate existing lawful contracts, or liabilities of the city.

3rd. The city is liable for the plaintiffs salary at the rate of $10,000 per year, though the board of apportionment has failed to provide for its payment.

*New York Special Term, December,* 1872.

THE plaintiff was elected justice of the first district court of the city of New York, and entered upon his six years term of office January 1st, 1870. His salary was fixed by the Mayor and Comptroller at $10,000 per annum and was paid at that rate up to September, 1871. Subsequent to that date the plaintiff's salary was paid at the rate of $5,000 per annum, and this action was brought to recover the balance due.

The answer of the defendants, verified by Andrew H. Green, comptroller of the city of New York, denies that the salary of plaintiff was fixed at the rate of $10,000 per annum, and alleged as a second defense that there was no money in the city treasury appropriated or applicable to the payment of plaintiff's salary at the rate of $10,000 per annum.

The answer did not deny any of the material facts set out in the complaint. The plaintiff demurred on the ground that the facts stated in the answer are not sufficient to constitute a defense.

The facts are very fully stated in the opinion of the judge.

268 NEW YORK PRACTICE REPORTS.

Quin agt. The Mayor, &c., of N. Y.

A. R. LAWRENCE, *for plaintiff.*

D. J. DEAN, *for defendants.*

FANCHER, *J.*—The plaintiff, at the charter election in December, 1869, was elected to the office of justice of the district court in the city of New York, for the first judicial district of said city, for the term of six years from the first of January, 1870, and he entered upon the duties of the office on that day and has since then continued to perform the same.

This action is brought to recover for the salary of the plaintiff, as such civil justice, from the first of September, 1871, to the 31st day of May, 1872, at the rate of $10,000 per annum. The first and second demands of payment, required by law, were made upon the comptroller, and he refused to pay the claim.

The answer of the defendants, verified by the comptroller, as chief financial officer of the city, denies that the salary of the plaintiff is at the rate of $10,000 per annum; alleges that it is fixed by law at $5,000 per annum, and offers to allow judgment at the latter rate. For a second defense the answer alleges that there is no money in the treasury of the city appropriated, or applicable, to the payment of the salary at the rate of $10,000 per annum; and finally sets up that on and since the first of October, 1871, there was no money in the treasury so appropriated or applicable.

To this answer the plaintiff has demurred, and the question is whether the answer states any lawful defense to the action.

1. The first question which arises on these pleadings is whether the salary of the plaintiff is lawfully fixed at ten thousand dollars per annum, or at the lesser sum of five thousand dollars per annum. *Chap.* 308 *of the laws of* 1864 provides, that the justices and clerks of the district courts should receive an annual compensation to be fixed by the board of supervisors. The complaint sets forth this provi-

NEW YORK PRACTICE REPORTS.        269

Quin agt. The Mayor, &c , of N. Y.

sion of law, and alleges that on the 31st day of December, 1864, an ordinance or resolution was adopted by the board of supervisors, and approved on the same day by the mayor, fixing the compensation of the said justices at $5,000 per annum, payable monthly.   The complaint sets forth the provisions of law, which authorize the common council or board of supervisors to increase the compensation of certain officers including police justices; and alleges that on the 31st of December, 1869, the common council passed an ordinance fixing the compensation of each of the police justices at $10,000 per annum; and that compensation was thereafter paid to them at that rate, and was so paid when *chap*. 383 *of the laws of* 1870, was enacted.

The last enactment reads as follows:

"The mayor and comptroller are hereby authorized to fix the salaries of the civil justices of the city of New York, or any or either of them, as they may deem the legal business of the respective districts to justify, *not exceeding the salary now paid to the police justices of said city.*"

It is conceded that the salary then paid to each police justice, under the color of the authority of law, and within the literal scope of the language of the legislature and of the common council, was $10,000 per annum; but it is contended that the common council had no lawful authority to increase such salary to that sum.

Whether the ordinance of the common council of the 31st December, 1869, by which the compensation of each of the police justices was fixed at $10,000 per annum, was legal and valid, or not, it is certain that it was adopted under the supposed authority of law.   *Chap.* 508 *of the laws of* 1860, contains the supposed authority and provides that "the common council or the board of supervisors in said city and county may increase the compensation of any officer mentioned herein," and police justices are officers mentioned in the act.

When this plaintiff entered upon the duties of his office

270         NEW YORK PRACTICE REPORTS.

Quin agt. The Mayor, &c., of N. Y.

the salary of a police justice, as fixed by resolution of the common council, and as paid, was $10,000 per annum, and this was the specified salary paid to a police justice when, in April following, *chap.* 383 *of the laws of* 1870 was passed. Now when the legislature by that act declared that the mayor and comptroller are thereby authorized to fix the salaries of the civil justices of the city of New York or any or either of them, as they may deem the legal business of the respective districts to justify, not exceeding the salary then paid to the police justices of said city, what did the legislature mean? It is plain they meant to grant to the mayor and comptroller a discretion to fix such salary at any sum not exceeding the sum *then paid* as salary to a police justice. It is in vain to assert that the salary of the police justice had been unlawfully fixed at $10,000 per annum. That is not the question; but rather what was the sum *then paid* as such salary? Unquestionably the sum was ten thousand dollars per annum, and, right or wrong, it was being paid under color of the authority of law. The act of 1870 does not refer to any law fixing the salary of a police justice, nor does it contain any language by which the act can be construed to mean the lawfully fixed salary of the police justice. On the contrary the expression of the statute is, "not exceeding the salary *now paid* to the police justices of said city."

On the 21st of October, 1870, the mayor and comptroller of the city in pursuance of the authority of *chap.* 383 *of the laws of* 1879, fixed the salary of the plaintiff, as such civil justice at $10,000 per annum, and signed a certificate to authenticate such action. They must, at that time, have supposed that their official act was valid and in accordance with law, and I can see no reason to suppose that it was not legal and valid.

It is said that when the common council, on the 31st of December, 1869, increased the salary of a police justice from $5,000 to 10,000, they acted in violation of law,

because *chap.* 876 *of the laws of* 1869, which was then in force, prohibited the common council from creating any new office or department, or increasing the salaries of officials then in office.

Suppose this objection as to the want of power of the common council to increase the salary of a police justice to be well taken. Does it overthrow the fact that the common council did pass an ordinance to increase such salary to $10,000 per annum, under which it *was paid* at that rate? The fact is, such an ordinance was passed, and from that time to the passage of the act of 1870, and the granting of the certificate of the mayor and comptroller above mentioned, the sum *then paid* as salary to the police justice was $10,000.

Whether the police justice got his salary lawfully or unlawfully, the amount then *paid him* therefore, under color of lawful authority, was $10,000 per annum. This *sum*, then, is the standard up to which the mayor and comptroller had a right, under the act of 1870, to go, when they fixed the salary to be paid to the civil justices of the city. This standard was the limit beyond which they had no discretion, and since they have not exceeded it, I think their action was legal. When courts are construing a statute with a view to its proper interpretation, the chief thing sought for is the thought expressed by the language of the statute. (*Newell* agt. *The People*, 7 *Y. N.*, 97). It is clear that the thought expressed by the language of the act of 1870 is a graduation of the salaries of the civil justices according to the discretion of the mayor and the comptroller, up to, but not above, the standard which was marked by the sum then paid for salary to a police justice. The idea that such sum was illegally fixed, could not, when the act of 1870 was passed, have entered the mind of the legislature, for the point had not been raised. If the salary of a civil justice in New York is not fixed at the proper amount, the remedy must be sought in the proper place, and not in the court which

cannot make law, but is only authorized to interpret and administer it.

2. The second defense set up by the answer is, that there is not money in the treasury of the city appropriated or applicable to the plaintiff's claim at the rate of $10,000 per annum.

*Chapter* 583 *of Laws of* 1871, *p.* 1268, is relied upon as supporting this defense. It is claimed that this act, commonly called the "two per cent." act, limits the amount to be raised by the board of supervisors, by taxation, for the year 1871, and that the board of apportionment, after providing for the principal and interest of certain bonds, and the city's proportion of the state tax, shall apportion the remainder of such aggregate amount "to the various departments and purposes of the city and county governments"; and that from the sum so raised "all the expenses of the city and county for all their departments and purposes shall be paid, and no liabilities shall be incurred for any purpose in excess of such amount (*Sec* 1-3).

It is further claimed that by said act the board of apportionment has power "to regulate the salaries of officers and employees of the city and county governments (*Sec.* 3).

The 5th section of the same act is relied on, which provides that "no liability for any purpose whatsoever shall thereafter be incurred by any department of the city of New York, or officers of the county of New York, exceeding in amount the appropriations made for such purpose; nor shall the city or county of New York be held liable for any indebtedness so incurred.

The civil justices are not attached to any of the "departments" of the city government, nor are they officers or employees of any of those "departments." This will be evident by a reference to the Charter of 1870, (1 *Laws of* 1870, *p.* 366 *chap.* 137), which defines what are the coordinate departments of the city government, and how they are constituted. The civil justices are elected by the elect-

ors·of the district in the manner prescribed by law. (*Laws of* 1857, *chap.* 344, 707, §5; *Laws of* 1865, 1398, *chap.* 688, § 8). But although not attached to any of the " departments" of the city government, still the justices of the district courts, in the city of New York, are entitled by law to have their salaries paid by the city. This is not disputed. When, therefore, the board of apportionment met to dispose of the moneys raised under the 'two per cent" act, they well knew that the salaries of the district court justices were to be provided for. Those salaries were then legally fixed at $10,000 each—at least the salary of the plaintiff was fixed at that sum. It is not asserted that out of the sum capable of being apportioned, provision could not have been made for the payment of these salaries and for all other purposes of the city and county government, by the board of apportionment, nor that to have done so would have required the board of apportionment to exceed the expenditure allowed by law. It is only asserted that' the board of apportionment did not, under the act of 1871, appropriate or make applicable to the payment of the plaintiff's salary any sum above $5,000 per annum. If this be so, the board has provided for half of the salary of the plaintiff accruing during '1871, and left the other half unprovided for. What are the plaintiff's rights under that state of facts ?

It is contended for the defendants, that by virtue of the statute, (*chap.* 583, *Laws of* 1871, § 5), no expense ean be incurred for 1871, in excess of the appropriations made ·by the board of apportionment; that neither the city or county of New York can be held liable for any such excess of indebtedness so incurred; that no legal claim, therefore, can exist for salary or other expense incurred in excess of the appropriation (*Donovan* agt. *The Mayor, &c.* (33 *N. Y.,* 291) ; and that no judgment can be recovered in such case unless it appears that there is money in the city treasury applicable to the payment of the claim (§ 6 *of chap.* 586,

*Laws of* 1867; *Tribune Association* agt. *The Mayor, &c.,* 48 *Barb.,* 240).

If, as we have seen in the case, when *chap.* 583 *of the Laws of* 1871 was passed, the salaries of the justices of the district courts of the city were fixed at $10,000 each per annum, and if, when the board of apportionment had made the appropriations thereunder for 1871, whether they exhausted all the fund at their disposal or not, they had allowed to the district court justices, for their salaries, but one-half of what they were entitled to receive, then it is clear that one-half the sums due the justices for their salaries would still be due to them above such appropriations. Can the city escape liability therefor under shelter of the act of 1871? Was that act intended to abrogate existing lawful contracts or liabilities of the city? It should not be construed to have such an effect unless it be necessary, and, I think, no such necessity exists. Suppose that in January, 1871, prior to the act, a contract had been duly made by the city with a timber dealer for supplying, during that year, a specified amount of certain timber, for repairing docks, or other lawful use, and that the contractor, faithful to the contract, had delivered all the timber during the year, and thus performed the contract on his part, but from some omission or design the board of apportionment had not appropriated sufficient moneys, according to the "two per cent" act, to pay for the timber, though the city received and used it all. Can it be pretended that the effect of the act is to deprive the contractor of his due, and that no "legal claim" could exist against the city therefor. If such is the effect of a proper interpretation of the act, it does not require argument to show that it is unconstitutional and void, I think the act is not obnoxious to such an interpretation. A more reasonable construction is possible. The act is prospective, and its provisions are not to have a retroactive effect. Whatever valid contracts or liabilities of the city existed at the date of its passage continue to exist, and are not abrogated by the act.

The language of the act of 1871, § 5, is, "no liability for any purpose whatever shall be hereafter incurred by any department of the city of New York, or officers of the county of New York, exceeding in amount the appropriations made for such purpose." · The plaintiff's claim is not a liability incurred by any "department" of the city, nor by any officer of the county, nor was it incurred after the act. On the contrary, it is a liability imposed on the city by the people in their sovereign capacity, through the act of the legislature, which requires the city to pay the salaries of the district court justices, and the liability was incurred before the act of 1871, and when the plaintiff assumed his office.

It may be true, that in respect of expenses for purposes of city or county government, incurred after the passage of the act, no liability therefor could be incurred by the city in excess of the amounts appropriated by the board of apportionment. After the act was passed, parties contracting with the city were advised of the provisions of the act, and could refrain from contracting so as to protect their rights; but parties who had been bound by contract, or by election and oath of office, prior to that time, could have no such advice or opportunity, and they would be entrapped and defrauded if the act be held to be retrospective and applicable to them. The plaintiff entered upon his office prior to the passage of the "two per cent." act; he took his oath of office prior to that time; and when the act was enacted, he was bound in law and conscience to continue to perform the duties of his office for the term for which he was elected, and he could not withdraw from the obligations. Neither law nor justice will, I think, permit the city to withdraw from its correlative obligation imposed upon it by law. It is liable for the plaintiff's salary at the rate of $10,000 per year, though the board of apportionment has failed to provide for its payment.

The case of *Donovan* agt. *Mayor of New York*, (33 *N. Y.*, 291), cited by defendant's counsel, held that where munici-

276    NEW YORK PRACTICE REPORTS.

Quin agt. The Mayor, &c., of N. Y.

pal officers act without authority in making a contract, the city will not be liable. Of course, if a party act in contravention of the policy and terms of a statute, he cannot invoke the aid of the courts to enforce an unlawful agreement. But what has this plaintiff done in contravention of any law? or what illegal duty has he undertaken? His office and duty as district justice are precisely within the express terms of law, and the principle of the case in 33 *N. Y.* does not seem to me to be applicable to him. He would have been guilty of violation of both law and duty had he refrained from exercising the functions of his office. Nor does the case of the *Tribune Association* agt. *The Mayor, &c., of New York* (48 *Barb.*, 240), affect the right of this plaintiff to recover for his salary. Under the statute of 1866, vol. 2, 2070, § 10, the general term of the first department held, that no judgment in actions upon contract could be entered by default or otherwise against the corporation of New York except upon proof in open court that the amount sought to be recovered remained unexpended in the city treasury to the credit of the appropriations to the specific object or purpose upon which the claim sued for is founded, and that the statute affected the remedy and not the contract, forasmuch as it prohibited the entry of a judgment until the appropriation was made. The court said the act "is not applicable to actions but to judgments."

An examination of the provisions cited from the 10th section of the act of 1866, with the entire control of the section, and with the other sections of that act, will show that the restriction as to the entry of judgments against the city, contained therein, is applicable only to the liabilities of 1866, and respects only the appropriations made under that act for the liabilities of that year. The consequences of holding that all of the liabilities for all time against the city shall not exceed the sum appropriated by that act for the purpose would be so absurd that no one will be found to contend that the restriction against rendering judgments ap-

plies to any claims or liabilities except those of the year of 1866. This construction is favored by the express language of the similar act of the succeeding year (2 *Laws of* 1867, 1606, § 6), which, in express terms, limits the restriction as to the entry of judgments by default or otherwise against the corporation of New York to that particular year and it is not extended to judgments generally.

But it is argued that *chap.* 583 *of the act of* 1871, § 3, authorizes the board of apportionment to regulate all salaries of officers and employees of the city and county governments, and forasmuch as the board have only appropriated money to pay the salaries of the district court justices, for 1871, at the rate of $5,000 per annum, therefore those salaries are thus lawfully regulated.   It may be questioned whether the officers thus referred to, include judicial officers. The term certainly does not include state officers who derive their office from the general laws of the state, and whose duties are not by law limited to the city and county of New York.   Yet resuming that the language just quoted is broad enough to embrace district court justices, whose salaries are paid by the city, there is this sufficient answer to the argument, that the salaries have been charged by the board of apportionment.   The act of the board of apportionment in setting apart or appropriating a certain sum for the payment of the salaries of the district court justices for 1871, which sum thus appropriated is less than the aggregate amount of such salaries as lawfully fixed, is not a regulation of such salaries so as to change the amounts of the salaries as already fixed.   Before the board of apportionment can change the amount of a specific salary they must act directly on the question of the amount of the salary, and explicitly make the change.

The change, or regulation of the salary to a different sum, will not be inferred from the indirect action of the board in setting apart an aggregate amount to meet the payment of

the same and similar salaries. It does not appear but that other moneys were at the command of the board which could be appropriated to the purpose, nor that the board intended to make no further appropriations for this purpose.

They have the express power by the 3d section of *chap. 583 of the act of* 1871 (as the comptroller has by *chap.* 9 *of Laws of* 1872), to "transfer appropriations which are found to be in excess of the amount required or deemed to be necessary to such other purposes as they shall find to require the same. The language implies that some of the appropriations made would be insufficient for the purposes for which they were made, and is potential in argument to show that an appropriation unequal to the purpose of paying certain fixed salaries was not a regulation or reduction of the salaries to the standard of the first appropriation. If there is not money in the city treasury sufficient to meet the payment of these salaries, it is not the fault of the law. There is sufficient lawful authority to raise the amount necessary under *chap.* 583 *of the Laws of* 1871, *and chaps.* 9, 29 *and* 444 *of the Laws of* 1872. The board of apportionment and audit can provide for the claims, and until the revenues from taxation are received the comptroller can issue bonds to cover all the deficiencies in respect of these salaries and the salaries of any judicial officers. It is not competent for the financial department of the city to say, " there is no money in the treasury to meet the claim," when the financial department and the board of apportionment and audit themselves might supply the deficiency. The claim is lawful and honest; there is abundant, lawful power to raise the money to provide for it; and if the board of apportionment and audit, and the comptroller, refuse or neglect to take the proper action to make such provision, then the remedy of the plaintiff is to establish his claim by a judgment and to collect it by an execution.

It is contended that because the legislature, by chap. 9

NEW YORK PRACTICE REPORTS.        279

Quin agt. The Mayor, &c., of N. Y.

of the laws of 1872, provided for a board of apportionment and audit, and gave to the board power to make an estimate of the amounts required to defray the expenses of conducting the public business of the city and county of Now York for 1872, the plaintiff should file his claim with such board. When that board made their estimate for the year 1872 they should have included the plaintiff's salary with the amount required to pay the salaries of other judicial officers, Under *chap.* 29 *and* 444 *of the Laws of* 1872, they could have made new estimates.   It appears, from the answer, that the board has failed of its duty in this particular.   The answer makes out that an amount is in the treasury sufficient to pay the plaintiff's salary at the rate of $5,000 per annum, and not more.   Is the city to escape its liability, or the plaintiff to lose his salary, because of this failure of the board of apportionment and audit?   No such consequences should follow.   If the board will not do what justice and law require, and what it might do to pay the just claims against the city, then the city must not only respond to its just liability, but be subject to the costs of a litigation it should have avoided.

Chapter 9 *of the laws of* 1872 declares that "it shall be the duty of such departments and officers (that is the departments of the city and the officers of the county of New York), to regulate expenditures so that they shall not exceed the appropriations made by said board for the period aforesaid; and no liability for any purpose whatever shall, during the period aforesaid, be incurred by any officer or department within said city and county beyond the appropriations so made."

As already remarked, the district court justices of the city are not attached to any of the "departments of the city, nor is the salary due to one of them, already fixed by competent authority according to law, before the passage of the act, a liability incurred by him.   In other words, the salary of a

district court justice, lawfully fixed before 1872, which may fall due for and during that year, is not a liability incurred by that officer against the prohibition of the law of 1872.

I do not think any lawful defense to the plaintiff's claim is set forth in the answer in this action, and judgment should be ordered against the defendants, for the amount of his claim, with costs, and five per cent. allowance.

Judgment is ordered accordingly.