DOUGLAS TAYLOR, Appellant and Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant and Respondent.

The provision of the act of 1869 providing for the government of the county of New York (§ 7, chap. 875, Laws of 1869) which prohibits the board of supervisors of said county from increasing salaries, "except as provided by acts of the legislature," does not apply where the legislature has expressly authorized said board to increase the salary.

Accordingly, *held*, that a resolution of said board passed December 28, 1869, under the authority of the act of 1855, in relation to the salaries of certain judicial officers (§ 1, chap. 575, Laws of 1855), authorizing it to increase the salaries of the city judge and other officers, which reso-

lution increased the salary of the city judge to $15,000 a year, to take effect January 1, 1870, was valid; and that under the provision of the act of 1870 relating to jurors for the city and county of New York (§ 17, chap. 539, Laws of 1870), providing that the salary of the commissioner of jurors "shall be at the same rate as the salary paid to the city judge," the said commissioner was entitled to a salary of $15,000 per annum.

Also, *held*, that the act of 1872 (chap. 367, Laws of 1872) confirming said resolution was not controlling to show that the resolution was invalid prior thereto, but was in the nature of a declaratory act.

Also, *held*, that the fact that the city judge, either by accident or design, was not actually paid at the rate of $15,000 after January, 1870, did not affect the rights of said commissioner of jurors; the intent was to give him the salary the city judge was entitled to, and whether the latter officer received it or not was immaterial.

Prior to the passage of the city charter of 1873 (chap. 335, Laws of 1873) the office of commissioner of jurors was not a city office, and the provision of said act (§ 97) authorizing the board of apportionment to reduce the salary of all officers paid from the city treasury, "whose offices *now* exist," did not apply to such office, as it only included city offices then existing, not those made city offices by the act itself.

Accordingly, *held*, that a resolution of the board of apportionment fixing the salary of said commissioner at $5,000 on July 1, 1873, was invalid.

*It seems*, that a resolution of the board of apportionment that the salary of a city officer "be fixed" at a less sum than that theretofore paid has the effect to reduce the salary, the same as if the word "reduce" had been used in the resolution.

Plaintiff, who at the time of the passage of said charter of 1873 was commissioner of jurors, continued to discharge the duties of the office after April 1, 1873, the time when, by the provisions of said charter (§ 117), his term of office expired, and up to April 1, 1874, no successor having been appointed, *held*, that this was to be regarded as a holding over under the provisions of the Revised Statutes (1 R. S., 117, § 9), and that plaintiff was entitled to his salary up to the time he ceased to act.

In an action against the city for an unpaid salary, interest is only recoverable from the time of demand.

(Argued September 21, 1876; decided October 3, 1876.)

THESE were cross-appeals from a judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

The nature of the action and the facts are set forth sufficiently in the opinion.

*A. Oakey Hall* for the appellant. When a statute respecting the salary of a public official admits of two interpretations, the construction should be favorable to the claims of the official. (*U. S.* v. *Morse*, 3 Story, 91.)

*David J. Dean* for the respondent. It was not the intent of the legislature that the salary of the commissioner of jurors should be dependent upon legislation, subsequently affecting the salary of the city judge. (*Quinn* v. *Mayor, etc.*, 63 Barb., 595; *Taylor* v. *Mayor, etc.*, 5 Daly, 488.) The regulation of salaries to be paid from the city treasury falls within the general subject of organizing the local government. (*In re Astor*, 50 N. Y., 367.) Plaintiff was a local officer and his salary might properly be the subject-matter of a local act. (*People* v. *McCann*, 16 N. Y., 58.) Plaintiff is only entitled to interest from the time of demanding payment of his claim. (*Darlington* v. *Mayor, etc.*. 31 N. Y., 193; *People* v. *Canal Comrs.*, 5 Den., 404.)

CHURCH, Ch. J. This action was brought to recover a sum claimed to be due the plaintiff for a portion of his salary as commissioner of jurors, from July 1, 1871, to April 1, 1874, and interest thereon, and also a sum for disbursements, over and above fines and penalties received by him. There seems to be no serious dispute in respect to the item for disbursements, amounting to $2,605.16, but several questions arise as to the amount due the plaintiff for salary, and it must be confessed that the acts of the legislature and local authorities have very much complicated the question. The court below allowed the plaintiff a salary at the rate of $10,000 a year. Both parties appealed, the plaintiff claiming $15,000 a year, and the defendant claiming that the plaintiff is entitled to $10,000 a year, to May 2, 1873, when his office terminated by act, chapter 335, of the Laws of 1872, section 117, but if he is deemed to have held over, until the 1st of May, 1874, that he is only entitled to $5,000 a year, from July 1, 1873, the board of apportionment having reduced the salary to that amount.

By act chapter 575, of the Laws of 1855, the board of

supervisors of the city of New York were authorized to increase the salaries of the justices of the Supreme Court, the judges of the Court of Common Pleas, the surrogate, recorder and city judge, or either of them. The board of supervisors, by resolution approved by the mayor on the 28th day of December, 1869, fixed the salary of the recorder and city judge at $15,000 a year to take effect January 1, 1870. The act chapter 539 of the Laws of 1870, section 17, provides that " the salary of the commissioner of jurors shall be at the same rate as the salary paid to the city judge," etc. It was found by the judge at Special Term, that the salary of the city judge prior to January, 1870, was $10,000, and that in point of fact he was paid only at the rate of $10,000, from January 1, 1870, to July 1, 1870, and hence it is claimed that the act of May 2, 1870, fixed the salary of the plaintiff at that sum. It does not appear what the salary of the plaintiff was prior to that time. By an act, chapter 367 of the Laws of 1872, the resolution of the board of supervisors, above referred to, respecting the salary of the recorder and city judge, was ratified and confirmed from and after January 1, 1872, and all payments made thereunder and any amounts due and unpaid were confirmed and declared valid.

It is suggested that the action of the board of supervisors, fixing the salary of the city judge at $15,000 a year, was invalid in consequence of the provision contained in the act, chapter 875 of the Laws of 1869, prohibiting the board of supervisors from increasing salaries, but the exception in the prohibitory clause, " except as provided by acts of the legislature," relieves the board from its operation in respect to these officers. We think the fair construction of this act is to prohibit an increase of salaries by the supervisors, except in those cases where the legislature had itself acted upon the subject. The legislature had expressly provided for an increase of the salaries of certain specified officers, and the action of the board in respect to these officers, was not included within the prohibition of the act. Otherwise it is difficult to give any effect to the exception. The confirmatory act of 1872 is not controlling.

It was probably passed to remove any doubt upon the question, which may have been entertained by the officers themselves, or by the city authorities. It is in the nature of a declaratory act, and has no material bearing upon the question. It follows that the salary of the city judge, from January 1, 1870, was $15,000, and the act of May 2, 1870, fixing the salary of the plaintiff " at the same rate as the salary paid to the city judge," would be decisive in fixing the salary of the plaintiff at that sum, except for the fact as found that the city judge between January and July, 1870, received only at the rate of $10,000 a year. The evidence does not clear up the apparent mystery why the city judge was not paid during the first six months of 1870, at the rate of $15,000 a year, when he was paid at that rate for the last six months, and, as I infer, before the confirmatory act of 1872 was passed. If he was entitled to be paid at the rate of $15,000, the circumstance that it was not paid to him, either by accident or design, cannot impair the force of the act of May 2, 1870, which, in effect, places the plaintiff upon an equality with the city judge. If the city judge had not in fact received any thing, the argument for the defendant would go the length of depriving the plaintiff of any salary. The evident meaning of the statute of May 2, 1870, is to give the plaintiff the same salary which the city judge was entitled to receive, and whether he ever did receive it, is of no moment. If he did not he is still entitled to it. It is not the actual fact of payment, but the rate authorized to be paid, which is the test. The legislature presumably understood what rate of salary was provided to be paid to the city judge, and to have passed the act with reference thereto, and not upon the unauthorized neglect of the city authorities, in omitting to pay, or the voluntary action of the city judge in omitting to demand full payment.

The case of *Quinn* v. *The Mayor* (63 Barb., 595) is not adverse to these views. Thereafter the common council, under color of statutory authority, fixed the salary of the police justices at $10,000 a year and the same was being regularly paid. No question of legality having been raised, the

legislature authorized the mayor and comptroller to fix the salaries of the civil justices at a sum "not exceeding the salary *now paid* to the police justices of said city." FANCHER, J., in delivering the opinion of the court, held that the legislature intended to act upon the existing fact of payment, under apparent lawful authority that it was a question of legislative intent, and that the strict legal validity of the action of the common council in fixing the salary of the police justices was not presented, nor within the contemplation of the legislature in conferring authority upon the mayor and comptroller to fix the salaries of the district justices, and the legal question was not considered or passed upon. It is a question of legislative intent in this, as in that case, and after the legislature had authorized the board of supervisors to increase the salary of the city judge, and the board had so increased it in pursuance of such authority, to $15,000, and the legislature then declared that the commissioner of jurors should have a salary at the same rate as that paid to the city judge, the intent to fix his salary at that sum is apparent, and the omission to pay or receive the whole or any part of that amount throws no light upon the question of intent, especially as that amount was actually paid after the first six months of 1870, under the same authority.

It is not disputed that the plaintiff continued to discharge the duties of the office after the passage of the act of 1873, for the time for which he claims a salary, and he must be regarded as holding over under the provisions of the Revised Statutes. (1 R. S., 117, § 9.)

The effect of the action of the board of apportionment in fixing the salary of the plaintiff at $5,000, on the 1st of July 1873, is not free from difficulty. The charter of 1873 (§ 97) reads as follows: "The salaries of all officers paid from the city treasury, whose offices now exist, but are not embraced in any department, shall be paid by the board of apportionment. Such board may, by a majority vote, reduce any such salaries, but shall not increase the salary of any office the compensation of which now exceeds $3,000."

I am unable to concur with the *argumenti gratia* of the learned counsel for the plaintiff that the resolution of the board of apportionment declaring that the salary of the plaintiff " be fixed at the rate of $5,000," was not appropriate in terms under the provision above quoted. The first resolution that the salary be "reduced and fixed" at $6,000 was passed and reconsidered when the resolution *fixing* the salary at $5,000 was passed. In respect to salaries which had been *fixed* theretofore, a resolution employing the words "reduce" or "fix" would accomplish the same result. The board had power to fix salaries in cases where they had not been before fixed, and to reduce existing salaries, but to declare a salary *fixed* at a specified sum which was less than the amount before allowed is as perfectly a reduction of the salary as if that word was employed.

A more serious question is whether the office of commissioner of jurors, as it existed at the time of the passage of the charter of 1873, was embraced within the terms of section 97 before quoted. We have recently decided in the case of *Whitmore* v. *The Mayor* (not reported) * in affirmance of the General Term of the first department, that section 97 was intended to apply only to city officers; that the plaintiff in that case being a clerk of the District Court was not such, and that the section did not apply to him. It is important, therefore, to inquire whether the plaintiff in this case was at that time a city officer. In the recent case of *Taylor* v. *Dunlap* (not reported) † ANDREWS, J., in delivering the opinion, expressed a doubt whether the commissioner of jurors was "distinctively" a county officer, but held that if he was, the office and its functions were of such a character that it was competent for the legislature to make it strictly a city office and that by the charter of 1873, the legislature did make it a city office, and that provisions for that purpose in the act of 1873, were not foreign to the subject expressed in the title, and were not therefore unconstitutional. It is evident from the opinion that the court decided the case upon this ground. This act

*Ante,* p. 21.                    † 66 N. Y., 162.

changed the mode of appointment from the supervisors and judges to the mayor and common council, and intended that it should be from that time a city office. Prior to this time I do not think, looking at the mode of appointment and removal as well as the duties and functions pertaining to it, that it can be regarded as a charter office proper, and I concur with the General Term, that the clause quoted of the act of 1873, did not embrace that officer. It embraced all city offices "now existing," which would not include a city office created by that act.

The plaintiff not being a city officer at the time the act was passed, was not included although the act made him so. It follows that the action of the board of apportionment in attempting to reduce the salary of the plaintiff to $5,000, was unauthorized and invalid. My conclusion therefore is that the plaintiff was entitled to a salary of $15,000 a year.

The question of interest remains to be considered. The defendants, I think, are correct in the legal position that interest can only be claimed from the time of demand. The city government is not required to seek out those who have claims against it, and pay them even when due. It is to be presumed that all proper liabilities will be paid upon demand. The charter prohibits any action against the city until thirty days after the claim has been presented to the comptroller. There was no evidence on the subject of a demand on the trial. It seems to have been assumed that a demand had been made from time to time.

After the trial upon the settlement of the case the judge was requested to find that no demand had been made, which was refused, on "the ground that no question as to the interest or the presentation of said claim was made on the trial of the action."

Under these circumstances I do not think the defendant is at liberty to urge the question here, but as there must be a new trial the interest can be properly adjusted at that time.

A new trial must be granted, costs to abide the event.

All concur.

Judgment reversed.