JAMES DUNPHY, Respondent, *v.* THE MAYOR, Etc., OF THE CITY OF NEW YORK, Appellants.

*Board of supervisors of New York — power to appoint deputy clerk — appropriation for payment of.*

The board of supervisors of the county of New York appointed, in 1860, a deputy to their clerk, and in 1864 fixed his salary at $4,000 per year, appropriations for the payment of which were made by the legislature in each year from 1860 to 1870. Chapter 190 of 1870, creating a new board of supervisors, provided that all officers and subordinates of the existing board holding office or place therein, should continue in their respective offices and places, subject to removal for misconduct and authorized the new board to fill vacancies. *Held,* that although there was no statute authorizing the old board to appoint a deputy clerk, yet the acts of the legislature annually appropriating money for the payment of his salary, and the act of 1870, conferred such authority upon the new board.

The plaintiff was appointed first deputy clerk of the board in January, 1872, and continued to perform the duties of his office until May, 1873. No appropriation for the payment of his salary was made by the board of apportionment, created by chapter 583 of 1871, for the year 1872 and the first four months of 1873. In this action, brought by the plaintiff to recover the amount of his salary for this period, the defendant insisted that the absence of an appropriation for its payment relieved it from all liability under section 5 of chapter 583 of 1871, providing that no liability should be incurred by the officers of the

county, for any purpose whatsoever, exceeding the amount of the appropriation made for that purpose. *Held*, that as the duration of the plaintiff's office was not prescribed by law, and as the board had power to terminate the same, its action in continuing to employ him, after it was known that no appropriation had been made wherewith to pay his salary, was a violation of section 5 of chapter 583 of 1871, and that the defendant was not liable for the debt so incurred. (BRADY, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered on the trial of this action by the court, without a jury, in an action brought by plaintiff to recover his salary as first deputy clerk to the board of supervisors of the county of New York.

*John H. Strahan*, for the respondent.

*D. J. Dean*, for the appellants.

DAVIS, P. J.:

The plaintiff was appointed to the office of first deputy clerk of the board of supervisors, by a resolution of that board, adopted on the 28th of December, 1871, to take effect on the 1st of January, 1872. He continued to perform the duties of the office until the 1st of May, 1873. The salary was fixed by the resolution of the board of supervisors, adopted in 1864, at $4,000 per annum, and that sum had been paid to the plaintiff's predecessor up to the date of the plaintiff's appointment. The salary was payable in monthly installments, but nothing has been paid to the plaintiff. Two points are made by the appellant. 1. That the supervisors were not authorized by law to employ a deputy clerk; and, 2. That the supervisors had no power to incur any expense for the salary of the deputy clerk in the years 1872 and 1873, because no money was appropriated for the salary of such officer during said years. As to the first of these points, it may be said that under the provisions of the Revised Statutes, the board of supervisors had power only to appoint the clerk, and none to appoint deputy or assistant clerks. It appears, however, that prior to 1864, and as early perhaps as 1860, the board of supervisors appointed a deputy clerk, and that in 1864 the board fixed his salary, by resolution, at $4,000 per annum, and continued such appointment from year to year, down to and including the time at which the respondent was appointed. Appropriations to pay the salary

of such deputy were made annually by the legislature for a period of ten years, as appears by the Session Laws of such years, from 1860 to 1870, both inclusive. (Chap. 509, Laws of 1860; chap. 240, Laws of 1861; chap. 452, Laws of 1862.; chap. 108, Laws of 1863; chap. 404, Laws of 1864; chap. 605, Laws of 1865; chap. 837, Laws of 1866; chap. 806, Laws of 1867; chap. 854, Laws of 1868; chap. 875, Laws of 1869, and chap. 382, Laws of 1870.)

By chapter 190 of the Laws of 1870, the legislature created for the county of New York a new board of supervisors, and by section 10 of that chapter declared that "all officers and subordinates of the existing board of supervisors, which would be superseded by the board constituted by this act, and which may severally be holding any office or place in the superseded board, shall continue in their respective offices and places, subject to removal for misconduct. Whenever any vacancy occurs in said transferred and continued office and place, it shall be filled by the board of supervisors hereby constituted." These various statutes, by necessary implication, we think, must be held to have conferred upon the board of supervisors the power to appoint a deputy clerk. A vacancy occurred in that office by the resignation of the incumbent on the 28th of December, 1871; to fill which vacancy the respondent was appointed. We are of opinion that the appointment was legal.

In relation to the second point, it is to be observed that the compensation of the deputy clerk was not one fixed by law, but was wholly dependent upon the resolution passed by the board of supervisors for its amount; and for its payment upon appropriations to be made from year to year by the legislature or other competent authority.

No appropriation for the payment of the salary of the deputy clerk of the board of supervisors was made by the legislature of the State for the year 1872 or the year 1873. By chapter 583 of the Laws of 1871, the board of apportionment of the city of New York was authorized to determine the amount to be expended for each object of public expense, and to determine the amount to be raised by taxes, and to distribute the same amongst the departments or officials authorized to incur debts. It was clearly the intention of the legislature by that act, that the amount of salaries should be

controlled and limited by the board of apportionment, in so far as they were not fixed by statutes regulating the salaries of officers elected by the people, or whose appointment was not within the discretion of local bodies or officers.

Section 5 of chapter 583 of the Laws of 1871, provided that no liability, for any purpose whatsoever, should be incurred by the officers of the county of New York exceeding the amount of the appropriation made for that purpose. It appears that the board of apportionment appropriated for the clerk of the board of supervisors for the year 1872 the sum of $5,000, which was the amount of his salary as fixed by the resolution of 1864, and that they made an appropriation for the first four months of 1873, for such clerk, at the rate of $5,000 per annum. No appropriation was made in either year for the payment of the deputy clerk. Nothing was paid to the respondent, and as his salary was payable monthly he must be deemed to have had notice, at least as early as the expiration of the first month of the year 1872, and at the expiration of each successive month during the period he held the office, that no appropriation to pay the salary of his office had been made, and that payment was refused to him for that reason. He continued, however, to hold the office and perform its duties taking the chances of being able to enforce payment of his salary, notwithstanding the board of apportionment had made no appropriation for such purpose. It appears very clearly that the amount appropriated by that body, authorized by law to perform that function, for the payment of clerical duties in the board of supervisors was fixed and limited at $5,000, and the question is simply, whether the board of supervisors had power to incur any liability beyond that sum, by continuing in office a deputy whose compensation was not and could not be met out of the sum so fixed by the board of apportionment. To us it seems clear that their act in so doing was the incurring of a liability exceeding the amount of the appropriation made for the purpose for which it was incurred; or, in short, that it was doing an act necessarily inhibited by the provisions of law above referred to. It is supposed by the learned counsel for the respondent that this question has been disposed of by the courts in *Quinn* v. *The Mayor* (63 Barb., 595); *Kessler* v. *The Mayor;* *The People ex rel. Monheimer* v. *Green; Monheimer* v. *The*

*Mayor*, and *Macgowan* v. *The Mayor*, and the learned court below appears to have been controlled by the decision of the Court of Appeals in *Costello* v. *The Mayor* and *Kessler* v. *The Mayor* (not yet reported). We think these cases are clearly distinguishable from the present case in this important particular: they were for the recovery of salaries or fees fixed by statute, and which could not be changed by the board of apportionment because not within their jurisdiction. They were liabilities not incurred or to be incurred by the action of any of the officers of the county, but by the necessary operation of law over which such officers had no control. In this case the liability was the result of an express employment or appointment by the board of supervisors for the performance of duties, for which another officer was provided by statute. Such appointment was discretionary and not compulsory. The duration of the office was neither prescribed by the Constitution nor declared by law, and the office was, therefore, held by express provision of statute " during the pleasure of the authority making the appointment." (1 Rev. Stat., p. 107, § 8 [Edm. ed.].) The power to terminate the office rested with the board of supervisors, and the incurring of the liability for the salary, after it was known to that body that no appropriation therefor was made, was a voluntary and unwarranted violation of the restrictions imposed upon them by the act of 1871. It was an expense within their control, and in the absence of an appropriation, the law devolved upon them the plain duty to stop it ; and for courts to adjudge a recovery is to sanction a violation of law.

If the respondent would be entitled to recover for services up to the time when the board of apportionment refused to make any appropriation for such services, it seems to us there can be no greater recovery unless we hold that the restrictive statute is not applicable to this case, or that the board of supervisors had power to override its provisions, notwithstanding the clearly expressed will of the legislature.

We think there should be a new trial, with costs to abide the event.

BRADY, J. (dissenting):

The office held by the plaintiff was one in existence at the time of the passage of the act of 1871 (chap. 583), and no liability was

created or incurred by continuing him in his position made legal by acts of the legislature. The liability already existed and it was the duty of the board of apportionment to provide for the salary.

The omission to do so should not prejudice him. If the city prevail herein on such a theory it takes advantage of its own wrong. It was properly said by DANIELS, J., when an application was made by the plaintiff for a mandamus: "So much of the salaries as would accrue and become payable in any one year ought, under the provisions of the law relating to that year, to have been included in the estimate made for its expenses. That was plainly the duty of the officials required to make those estimates." And further: "It was to supply the omission arising out of that neglect that the present proceedings were instituted." If the office held by the plaintiff had been created after the estimates were made it would present a case contemplated by the act of 1871.

I think the judgment should be affirmed.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment reversed, new trial ordered, costs to abide the event.