JOHN COX, Appellant and Respondent, *v.* THE MAYOR, ALDER-
MEN AND COMMONALTY OF THE CITY OF NEW YORK, Appel-
lant and Respondent.

Prior to 1860 the salary of police justices of the city of New York was
$3,500; by the act of that year providing for the reorganization of the
police force of the city (Chap. 508, Laws of 1860), certain additional
duties were imposed upon said justices, and because thereof the common
council or board of supervisors was authorized to increase their compen-
sation. In December, 1862, the common council, professing to act under
said statute, increased such salary to $5,000. By the act of 1869 (Chap.
876, Laws of 1869), that body was prohibited from increasing sala-
ries "except as provided by acts passed by the legislature." In De-
cember of that year the common council adopted a resolution which
fixed the salary of police justices at $10,000 after January 1, 1870.
Plaintiff, who was a police justice at that date, was paid at the rate so
fixed until August 1, 1871, and thereafter, during his incumbency, at the
rate of $5,000. In an action to recover the difference between the two
rates, as salary unpaid, *held,* that the act of 1860 only authorized one in-
crease, and by the increase made in 1862 the power of the common council
was exhausted, and that, therefore, the resolution of 1869 was invalid.

By the city tax levy of 1870 (§ 1, chap. 383, Laws of 1870, p. 888), the mayor
and comptroller are authorized to fix the salary of civil justices at a sum
" not exceeding the salary now paid to the police justices." The civil jus-
tices were then receiving $5,000. In pursuance of that act the officers
named fixed their salaries at $10,000, and this was held to be the lawful
salary. (*Quinn* v. *Mayor, etc.,* 63 Barb. 595; affirmed, 53 N. Y. 627.) It
was claimed that the statute referred to was an approval and ratification
by the legislature of the increase. *Held* untenable; that there could be
no presumption that the legislature knew when passing said act that there
had been an attempted unlawful increase in the salary of police justices,
or knew what salary was, in fact, being paid.

It was also claimed that, as in the gross sum allowed by said act of 1870,
was included the amount needed to pay the salaries of police justices at
$10,000 each, the increase was thus approved and ratified. *Held* un-
·tenable.

A legislative ratification of what was previously unlawful must be found
in plain language; it cannot be established by uncertain implications and
doubtful inferences.

Defendant set up as a counter-claim the excess paid over the lawful salary.
*Held,* that as, so far as appears, the money was received in good faith,
there was no mistake of fact, and the payments were made volunta-
rily by the city officials, out of moneys lawfully placed in the city treas-
ury for that purpose, the counter-claim was properly disallowed.

(Argued October 18, 1886; decided November 23, 1886.)

THESE were cross-appeals from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 20, 1886, which modified and affirmed as modified a judgment in favor of defendant, entered upon a decision of the court on trial without a jury.

This action was brought by plaintiff to recover a balance of salary alleged to be due and unpaid to him as a police justice of the city of New York.

The material facts are stated in the opinion.

*Thomas Allison* for plaintiff. The power conferred by chapter 508, section 26, Laws of 1860, page 1014, authorized the increase, by the common council of the city, of the salaries of the police justices to $10,000. (*People* v. *Edmonds*, 15 Barb. 529, 533; § 202, N. Y. City Cons. Act of 1882, chap. 575, Laws of 1855; *People* v. *Devlin*, 33 N. Y. 272; *Weed* v. *Tucker*, 19 id. 422; *People* v. *Eddy*, 57 Barb. 593; *Taylor* v. *Mayor, etc.*, 67 N. Y. 90.) The action of the common council, acting or claiming to act, pursuant to or under color of, the power conferred by the statute of 1860 in increasing, on December 31, 1869, the salaries of the police justices to $10,000, was approved and ratified by the legislature. (Chap. 876, Laws of 1869, § 12; chap. 383, Laws of 1870, p. 888; *Nelson* v. *Mayor, etc.*, 63 N. Y. 545; *Brown* v. *Mayor, etc.*, id. 243.) The approval and ratification by the legislature of the increased salary of the police justices is also unmistakably shown by its providing, by chapter 383, section 1, page 888, Laws of 1870, for and authorizing an increase of the salaries of the civil justices to an amount not exceeding the salaries then paid to the police justices. (*Quinn* v. *Mayor, etc.*, 63 Barb. 595; Potter's Dwarris on Stat. 128.) When the legislature acts in any particular matter, it is presumed that it does so with a knowledge of all the facts relating thereto. (*Brown* v. *Mayor, etc.*, 63 N. Y. 244–5; 1 Hun, 61; *Nelson* v. *Mayor, etc.*, 63 N. Y. 545–6.)

*David J. Dean* for defendant. The common council had

no power to increase the salaries of police justices on the 31st of December, 1869. (Laws of 1860, chap. 508, § 26 ; *People, ex rel. Williams,* v. *Haines,* 49 N. Y. 593 ; *Sherman* v. *Boyce,* 15 Johns. 443.) The attempted increase of salary by the resolution of the common council was not validated by the subsequent action of the legislature in chapter 383 of the Laws of 1870, authorizing the mayor and comptroller to fix the salaries of the civil justices at such sum as they might deem the business of their courts to justify, not exceeding the salary then paid to police justices. (*Quinn* v. *Mayor, etc.,* 44 How. 270 ; *Smith* v. *Mayor, etc.,* 1 Hun, 59 ; *Newell* v. *People,* 3 Seld. 9 ; *People* v. *Utica Ins. Co.,* 15 Johns. 358.) The attempted increase of salary was not validated by the action of the legislature, directing the sum of $364,435 to be raised for expenses of the city courts in the year 1870. (Chap. 383, Laws of 1880, the Tax Levy Act.) The defendants are entitled to recover all payments made to the plaintiff in excess of the salary established by law. (*People* v. *Fields,* 58 N. Y. 505 ; *U. S.* v. *Bartlett,* Davies, 9 ; *Stevenson* v. *Mortimer,* Cowp. 803 ; *Taylor* v. *Plummer,* 3 M. & S. 563 ; *Supervisors* v. *Ellis,* 59 N. Y. 625 ; *Lee* v. *Monroe,* 7 Cranch, 366.)

EARL, J. The plaintiff was elected one of the police justices of the city of New York in the fall of 1869 for the term of six years, commencing on the first day of January following, and he served in his office until November 3, 1873, when his term came to an end pursuant to the provisions of section 2 of chapter 538 of the Laws of 1873. He was paid for his salary at the rate of $10,000 per year to and including July 31, 1871; and thereafter while he was in office he demanded his salary at the same rate, but was paid only at the rate of $5,000. He commenced this action to recover the balance of his salary, being the difference between the $5,000 paid and the $10,000 claimed. The defendants in their answer alleged that the plaintiff's salary was lawfully but $5,000, and that he was paid the greater sum in 1870 and 1871 by mistake and without authority of law, and they set up the over-payment

of $7,916.66 as a counter-claim for which they demanded judgment.

The action was brought to trial before a judge without a jury, and he found that plaintiff's salary was lawfully but $5,000, dismissed his complaint and gave judgment to the defendants for their counter-claim. The plaintiff appealed to the General Term where the court modified the judgment by disallowing the counter-claim and affirming it as so modified. Both parties then appealed to this court.

While this case is not free from some difficulty and doubt, we find no satisfactory reason for differing from the General Term.

The act, chapter 508 of the Laws of 1860, provided for the reorganization of the police courts in the city of New York, and imposed additional duties upon the police justices; and in section 26 provided as follows: "And for the additional duties imposed in this act the common council or board of supervisors in said city and county may increase the compensation of any officer mentioned herein." At the time that act was passed the salary of police justices was $3,500; and in December, 1862, the common council, professing to act under that statute, increased the salary to $5,000, payable monthly, from January 1, 1863. By section 11 of the act, chapter 876 of the Laws of 1869, it was enacted that "the common council or any head of department of the city of New York is hereby prohibited from creating any new office or department, or increasing the salaries of those now in office, or their successors, except as provided by acts passed by the legislature."

On the 31st day of December, 1869, the common council adopted a resolution which provided that from and after January 1, 1870, the salary of police justices should be $10,000, payable in equal monthly installments. The claim of the plaintiff is that by this resolution his salary became lawfully fixed at the sum of $10,000. Whether or not this claim is well founded depends upon the construction to be given to section 26 of the act of 1860. Did that section empower the common council to increase the salary of police justices from time to

time, or only once? We are of opinion that it authorized but one increase, and that by the increase made in 1862 the power of the common council to increase the salary was exhausted.

By the act of 1860 additional duties were imposed upon the police justices, and in view of that circumstance and to adjust the salary to the new state of things, the power to increase was conferred. It was not a power which, to promote the public good or to carry out a definite public policy, was required to be continuously possessed or repeatedly exercised. The language of the statute seems to have been carefully selected, and if it had been intended to lodge a power in the common council liable from continuous importunities of office-holders to be abused, we might expect to find the intent expressed in more appropriate and unmistakable phraseology. It is a delegated power which should not be extended by construction, implication or doubtful inference. There was authority to make the salary commensurate with the public service required, and this was to be exercised, not piece-meal, but once for all. Therefore the resolution for a further increase of the salary on the 31st of December, 1869, was unauthorized and was also in violation of section 11 of the act of 1869 above quoted, and the plaintiff cannot, therefore, base his claim upon that resolution alone.

But the claim is made that the legislature approved and ratified the increase of the salary of police justices to $10,000, and that, therefore, plaintiff's claim to the increase is well founded.

In chapter 383, Laws of 1870 (p. 888), it was enacted as follows: "The mayor and comptroller are hereby authorized to fix the salaries of the civil justices of said city (and any or either of them) as they may deem the legal business of the respective districts to justify, not exceeding the salary now paid to the police justices of the city." The civil justices were then receiving a salary of $5,000, and in pursuance of that act the mayor and comptroller fixed the salary at $10,000, and it was held that thereby that sum became the lawful salary. (*Quinn* v. *Mayor, etc.*, 63 Barb. 595; affirmed in this court, 53 N. Y. 627.)

It is contended that the legislature must be presumed to have known that the salary of police justices had been increased to $10,000 and to have intended to confer authority to make a like increase to the civil justices, and that thus it ratified the salary then allowed to the police justices. We cannot assent to this claim. It is a rule of construction that the legislature is presumed to have knowledge of the facts directly involved in its acts. But it would be quite absurd to presume that it had knowledge of all the collateral and remote facts involved, or that it contemplated all the consequences to flow directly or indirectly from its legislation. Its knowledge falls far short of omniscience, and the rule can go but little further than to deny the right to assail legislative acts on the ground that they were passed through ignorance or mistake of fact. There can be no presumption that the legislature knew when they passed the act referred to that there had been an attempted unlawful increase in the salary of police justices, or that it knew what salary was in fact paid or payable to them. It was simply dealing with the salary of civil justices, and it empowered the officers named to fix that at any sum not exceeding that paid to the police justices, and there can be no inference that it intended in any way to act upon or affect the salary of the latter officials, and hence there is no ground for saying that it approved that salary. It was, however, held upon a course of reasoning not altogether satisfactory, that as $10,000 was the salary actually paid to the police justices at that time, the strict letter of the act authorized an increase of the salary of the civil justices to the same amount, and that conclusion was reached without determining whether or not the salary of the police justices had been lawfully increased to $10,000.

By the statute (Chap. 876 of the Laws of 1869, § 12, p. 2133), the legislature required that thereafter all estimates for the anticipated expenditures of all boards and departments of the government of the city of New York should be made by the chief officers of every such board and department in connection with the mayor and comptroller, and submitted to the common council at the first meeting thereof in January in each

year; and that the estimates so submitted, whether acted upon or not by the common council, should be presented by the mayor to both branches of the legislature on or before the first Tuesday in March, and that the same when so presented were to be taken to be the sole official estimates of such boards and departments for such annual expenditures of the year, and to include all expenses that in the opinion of such officers might be necessary.

As thus required, the estimates of the anticipated expenditures of the city for the year 1870 were made up at a meeting of the chief officers of the boards and departments of the city, and the mayor and comptroller, held November 29, 1869, when a resolution was adopted approving of the same. In those estimates the salaries of the police justices were estimated and stated in detail under the general head, "salaries city courts" (which included the police courts), at $5,000. Before those estimates were, however, submitted to the common council it had increased the salaries of police justices to $10,000 per annum. In consequence of this increase new estimates of the expenses of the city courts, which included the police courts, were made, showing the estimated salary of each of the police justices to be $10,000 per annum. Pursuant to the further requirements of the statute, the estimates so made were submitted to the common council at the first meeting of the board held in January, 1870. The estimates so submitted showed in detail, in the estimated expenses of the "city courts," the salary of the police justices to be $10,000, and they were acted upon by the common council, and its action was approved by the mayor. Those estimates were transmitted by the mayor before the first Tuesday of March, 1870, to both branches of the legislature, accompanied by a memorial of the mayor and comptroller praying that action might be taken by the legislature upon the same. Upon this memorial and accompanying estimates the legislature made the necessary appropriation to meet the expenses estimated. This was done by the statute known as the city tax levy of 1870, being chapter 383, Laws of 1870, page 881. By this act (p. 888) the

amount appropriated and authorized to be raised for salaries of the city courts was $364,435.

It is further claimed that by this action of the legislature authorizing a levy of taxes for city expenses, including the large gross sum for the city courts, which was in part made up of the amount needed to pay the salaries of police justices at $10,000, the salary at that sum was also approved and ratified.

It cannot be presumed that the legislature had knowledge of all the facts upon which the city authorities based the estimates consisting of hundreds and probably thousands of items submitted to it.  It knew that those authorities had made their estimates of the money needed for city expenditures, and it authorized the money to be raised, but it did not authorize the money when raised to be paid out for unlawful purposes. It authorized a gross sum to be raised for city courts, but when raised that sum was to be paid out not otherwise than according to law.  In authorizing that amount to be raised, there is no reason for saying that it meant to change or increase salaries, or to ratify any illegal action of the city officers.  Sound policy requires that legislative ratification of what was previously unlawful should be found in plain language, and not left to uncertain implication and doubtful inferences resting upon slender foundations.  If the legislature had expressly authorized the raising of a gross sum in terms to pay each of the police justices a salary of $10,000, we would have had a different case.  Ratification, whether by the legislature or individuals, is a matter of intention, and that should be made to appear.

The plaintiff's complaint was, therefore, properly dismissed, and it only remains to be determined whether the counterclaim of the defendants was properly disallowed.

The salary had in form been increased before the plaintiff entered upon the duties of his office, and he received payment at the rate of $10,000 per year for one year and seven months, so far as appears, in good faith without any mistake of fact, he and the other city officers concerned believing that the increase had lawfully been made.  He received the payment more than six years before the commencement of this action

out of moneys for that purpose lawfully placed in the city treasury by the combined action of the State and local legislatures. If the statute of limitations had, therefore, been set up in the reply as a defense to the counter-claim, it would have been a complete answer to the same. Under the circumstances it would be a hard measure of justice to compel the plaintiff, at this late day, to restore the money thus received with the interest thereon. As appears from the opinion of the General Term, the counter-claim was there disallowed on the ground that the payments to the plaintiff were voluntary, and without giving our reasons at length, we simply announce our concurrence in that conclusion.

The judgment should be affirmed.

All concur.

Judgment affirmed.