Laude vs. The Chicago & Northwestern Railway Company.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial awarded.

## LAUDE vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

STATUTES: (1) *Repeal and re-enactment at same time.*
NEGLIGENCE: RAILROADS. (2) *When not error to assume plaintiff free from negligence.* (3) *Liability of R. R. for leaving fence down.* (4, 5) *Facts held not to relieve R. R. from liability.*

1. The effect of a repeal of a statute and its re-enactment in the same words by a statute which takes effect at the same time with the repealing act, is to continue such statute in uninterrupted operation.

2. Shortly before sundown, in February, plaintiff's two colts escaped by accidentally running against and forcing open a gate in his barnyard fence — plaintiff being then at supper. After supper, the colts being out of sight, plaintiff went a mile in the direction he supposed they had taken, and, not finding them, returned home. Before daylight the next morning, the colts were killed on defendant's road. *Held*, that upon proof of these facts, the court did not err in assuming (and refusing to submit the question to the jury) that plaintiff was not guilty of contributory negligence in failing to seek for the colts with due diligence.

3. If defendant left its fence, at a point on the line of its railroad, to remain down for a long time, its agents knowing the fact and having time and opportunity to make the repair, and plaintiff's colts got upon the railroad through such opening (without contributory negligence on plaintiff's part), defendant was liable for all damages done to the colts.

4. The facts that one E., through whose land defendant's road runs at the place in question, had let down said fence and left it open for the purpose of drawing wood through it to the railroad track, and that it was winter, when horses are not accustomed to go at large or wander abroad through the fields, and that it had been usual to leave the fence open in like manner and for a like purpose during previous winters, would not excuse the defendant, *as against the plaintiff*, from the absolute

duty imposed by the statute, as to maintaining the fence; though the fact first mentioned would excuse the defendant *as against E.*

5. The fact that the plaintiff had, in former seasons, *used the opening* in the fence, thus made by E., for the purpose of drawing wood to the railroad, was no evidence of his consent to the maintenance of such opening, which would relieve the company from liability in this action.

APPEAL from the Circuit Court for *Fond du Lac* County.

The action was brought by *Laude* to recover damages sustained by the loss of two colts, which were killed by the cars on the track of defendant's railway. The complaint alleges, in substance, that the colts were killed by reason of the negligent manner in which the defendant's agents and employees conducted and managed the cars and locomotive of defendant. The answer set up a general denial, and negligence on the part of plaintiff in permitting his colts to run upon defendant's track. It appeared in evidence that the colts escaped from plaintiff's yard by running violently against the gate and breaking it open, and that they got upon the track of defendant's road, through an opening in the fence of one Elmer, where they were killed by the cars, the killing being undisputed. The colts escaped from plaintiff's yard at about five o'clock in the evening, while he was at supper, and near sunset, it being in the month of February. On coming out after supper, plaintiff found the colts gone, and followed about a mile in the direction which he supposed they had taken, but failed to find them. They were killed before daylight on the following morning. It also appeared in evidence that the opening in Elmer's fence, through which the colts reached the railroad track, was made for the purpose of drawing wood to the railroad; that it had been the custom for a number of years previous, during the winter months, to leave the railroad fence down at different places in that vicinity, by permission of the company, to allow farmers to deliver wood on the track, and that the opening in question had been used for this purpose for

several winters previous. McGrath, the foreman of defendant in charge of this section of the road where the colts were killed, testified that he went over the road from three to six times a week; the fence was down during the whole winter, until April or May, when it was repaired by witness or his men. "I know it has been the practice or custom for farmers to take down the fence at all points, to draw wood to the railroad. The railroad has been in the habit of giving their consent. I know the fence was down; I saw it down at twenty different places along my seven miles. My part of the fence was down during the whole year. * * * I think it was generally known and understood that it had been the custom, in that neighborhood, of the farmers, including the plaintiff in this case, for several years past, in the winter time to open the railroad fences adjacent to their land, and to leave them open during the winter season when the snow was on the ground and when the cattle and horses were not running at large, for the purpose of drawing and delivering wood on the track; I think the plaintiff knew of the custom; he had drawn wood to and upon the track of the defendant for several years past, and left the fence open in the same way the others did; he had permission to do this from the company." It did not appear that plaintiff had used any such openings in the railroad fence for hauling wood during the winter when the accident occurred. The instructions to the jury are sufficiently stated in the opinion.

Verdict for plaintiff for $150, and judgment thereon, from which defendant appealed.

*Eldredge & Mayham*, for appellant, contended that even if the liability of the company under the statute were absolute, the party for whose benefit the protection was provided might waive it. Plaintiff's consent, therefore, and his concurrence in the fence being open, his opening it himself and leaving it open, were qualifying facts, and should not have been excluded from the consideration of the jury. Leaving the fence open was not necessarily legal negligence. The statute provides that

until such fence shall be duly made, the company shall be liable for all damages. But after it has been duly made, negligence or wilfulness must be proven. It is then a question of fact, for the jury to find from the evidence, and not to be found upon the statute itself. Failure to keep up the bars is not necessarily negligence, nor is it a fact from which the court can charge the existence of negligence. *Chicago & N. W. R'y Co. v. Goss*, 13 Wis., 428. 2. Counsel also contended that the court erred in ignoring the question of contributory negligence on plaintiff's part in failing properly to pursue the colts at the time of their escape.

*Knowles & Babcock, contra,* argued that the statute imposed an absolute duty upon railway companies to fence their roads, and to keep the fences in repair, and makes them liable for all injuries resulting to animals arising from their neglect to do so. *Antisdel v. Ch. & N. W. R. Co.*, 26 Wis., 145. And see 107 Mass., 411.

DIXON, C. J. The effect of the repeal of a statute, and its reënactment in the same words by a statute which takes effect at the same time with the repealing act, is to continue such statute in uninterrupted operation. *Fullerton v. Spring*, 3 Wis., 667 ; *Hurley v. Town of Texas*, 20 id., 634. Counsel for the defendant are correct, therefore, in treating this case as if it had arisen subsequently to the passage of chapter 119, Laws of 1872, the 30th and 31st sections of which are a reenactment of sections 1 and 2 of chapter 268, Laws of 1860 (Tay. Stats., 1044, §§ 34, 35), which chapter was repealed by section 56 of the same act.

Counsel criticise the instructions of the judge, and his refusals to instruct, in two leading particulars : namely, that he did not submit to the jury as matters of fact to find whether the plaintiff was guilty of contributory negligence in not making further and more diligent pursuit and search for his colts after their escape from his inclosure, and whether the railway company

Laude vs. The Chicago & Northwestern Railway Company.

was not excusable under the circumstances in permitting its fence to remain open or down in places in the manner and for the purposes described by the witnesses. It is also objected that the evidence tended to show consent on the part of the plaintiff to the fence being open, which evidence the court refused to notice or to submit to the consideration of the jury ; and that the instruction did not fairly present to the jury the question whether the company was guilty of negligence in not having put up or repaired the fence after it was known to its agents and servants to be open. The substance of the errors complained of is, that the instructions made the issue solely dependent on the diligence of the plaintiff in keeping the colts within his own inclosure, and on the neglect of the defendant to repair the fence after a reasonable time had elapsed for that purpose, with knowledge of the defect on the part of its agents and servants.

The instructions complained of, numbered four, five and six, were in these words :

" It is a general principle, that when the law imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty, he is liable to those for whose benefit it was imposed for any damage sustained by reason of such neglect, unless the negligence of the party injured contributed to the injury. or damage sustained.

" If the jury shall find from the evidence that the plaintiff exercised ordinary care in keeping the colts upon his own inclosure, and they escaped through accident, or through a reason which would not be charged to the neglect of the plaintiff in keeping them inclosed, and the colts got upon the railroad of defendant through a portion of defendant's fence which was down, and which defendant was by law bound to maintain, and if the jury shall further find that the defendant suffered such fence to remain down for a long space of time, and the agents of the defendant knew of the fence being open or down a sufficient length of time in which they could have repaired it, before

the colts went through it, then the defendant was negligent, and is liable for all damages done by its engines or cars to the colts while on the track.

" In this case, the plaintiff is only to be held to the exercise of ordinary care and prudence in the manner in which he provided for the colts being kept in his inclosure, with reference to his surroundings; and if the jury ,shall find that the plaintiff did not exercise ordinary care and prudence in caring for his colts in keeping them within his inclosure, with reference to his location and surroundings, and was in any way culpably negligent, or in any way his negligence contributed to the killing of the colts, then he cannot recover in this action."

The exception to the third instruction, respecting the high degree of diligence imposed by the law upon railroad companies in building and maintaining their fences (that instruction being fully sustained by the decision in *Antisdel v. The Chicago and Northwestern R'y Co.*, 26 Wis., 145), is not urged on this appeal.

Among other requests to charge made by the defendant and refused by the court, was the following :

" If you find that the colts in question strayed a long distance from the premises of the plaintiff, to and upon the defendant's road, through the defendant's fence, at a point where the same had been opened by the said Elmer, adjacent to his land, for the purpose of hauling his wood upon or across the track, and had by said Elmer been left open, and the colts were injured by the train of the defendant, without fault or negligence on the part of defendant's servants in running the same, then and in that case the plaintiff may recover damages from said Elmer, but cannot recover in this action, unless you find that the defendant was guilty of negligence in suffering the fence to remain open ; and, in determining the question of negligence of the defendant, you should look at all the circumstances of the case, the season of the year, the place where the

fence was open, and all other facts given you in evidence which will assist you in arriving at a correct conclusion."

Another of the requests to charge, which was refused, was one, the intention of which was to bring out the point of the plaintiff's assent to the opening of the fence, and of his use of it at some former time, through which to draw wood to the track of the railroad.

A careful examination of the whole case satisfies us that there was no error in the instructions, or in the refusals to instruct.

The court was right in assuming that there was no evidence to go to the jury on the question of contributory negligence on the part of the plaintiff in not having made greater efforts to find and bring home the colts on the evening of their escape. They escaped by the accident of running against and forcing open a gate in the fence inclosing the barnyard of the plaintiff, where they were kept. This happened about the hour of five o'clock in the afternoon, and shortly before sundown, on the 23d day of February, and when the plaintiff was at his supper. After supper, the colts being then out of sight, the plaintiff went in the direction he supposed they had taken, for the distance of about one mile, in search of them, and, not finding them, returned home ; and before daylight the next morning, the colts were killed. No negligence was imputable to the plaintiff upon these facts, and the court judged correctly that there was nothing to submit to the jury.

Neither was the court wrong in charging that if the defendant suffered the fence to remain down for a long space of time, its agents knowing the fact, and having had time and opportunity to make the repair, then the defendant was negligent and liable for all damages done by its engines or cars to the colts while on the track. This was a clearly correct conclusion of law from the facts stated or supposed, unless the company was excused from the performance of the statutory duty imposed, by the fact that Elmer had let down and left the fence open

for the purpose of drawing wood through to the railroad track, or the fact that it was the season of winter, when cattle are not accustomed to go at large or wander abroad through the fields, and the further one that it had been usual to leave the fence open in like manner and for like purposes during previous winter seasons. Counsel for the defendant seems to rely upon all these as circumstances of excuse, from which, if properly submitted for their consideration, the jury might have found the defendant not liable for the injuries complained of by the plaintiff. This is a mistaken view, we think, of the statute, and of the obligation imposed by it. The statute contains no exceptions for particular seasons of the year, or for particular circumstances which may render the opening of fences convenient or necessary, either for the company or for adjoining land proprietors, but makes the duty of maintaining the fences continuous and uninterrupted. Neither does it allow cessation in the performance of that duty on account of previous custom or usage. Such custom, being in contravention of the requirements of the statute, is of course void, and can avail nothing as an excuse. The circuit judge was consequently right in holding, so far as these supposed grounds of excuse were concerned, that the liability imposed by the statute was absolute, and that the company must pay the damages sustained by the plaintiff.

And so far as the act of El ᵔer, the adjoining proprietor, in letting down the fence between his land and the land of the company or line of the road (which act, it seems, was assented to or suffered without objection by the agents of the company) may be supposed to relieve the company from responsibility, we think the true rule of law is that held by the supreme court of Maine in a late case, *Gilman v. Railroad Co.*, 12 Am. Law Reg., N. S., 555 (Sept., 1873). Such act would relieve the company from all liability to Elmer for any injuries sustained by him in consequence of the removal or insufficiency of the fence. It would not, however, relieve it from liability for loss

or damage caused to the cattle of innocent third persons, coming upon the land of Elmer, whether as trespassers or not, and straying thence upon the track of its road.    Such is the rule of the case referred to, which is well sustained by the reasoning of the court, and is as correct and applicable under the provisions of our statute as of the statute of Maine.

The position that the plaintiff consented to the opening of the fence by Elmer requires only a passing remark.    There was no evidence of such consent except that to be implied from the plaintiff's having used the openings in the fence in seasons past for the purpose of drawing and delivering wood on the railroad track.    No evidence of any use of the kind during the winter in question was offered ; and if it had been, it is not perceived how that circumstance alone could have operated to debar the remedy of the plaintiff, or have been construed as a consent on his part to the fence remaining open.

*By the Court.*—Judgment affirmed.