THE PEOPLE ex rel. DOUGLAS TAYLOR, Appellant *v.* THOMAS DUNLAP, Respondent.

The office of commissioner of jurors, created by the act of 1847, "in relation to jurors of the city of New York" (chap. 495, Laws of 1847), was not made thereby distinctively a county office, nor did the commissioners succeed to powers theretofore exercised by an officer of the county of New York.

Assuming, however, that it was a county office, it was a new office created by the act; the legislature had power subsequently to change its character from a county to a city office, and to provide for a different mode of appointment.

The provision, therefore, of the act of 1873, "to reorganize the local government" (chap. 335, Laws of 1873), vesting the power of appointment of commissioner of jurors in the mayor and common council, which made the office distinctively a city one, whatever had been its previous character, is embraced in the subject expressed in the title of the act, and so not in conflict with section 16 of article 3 of the State Constitution; and an appointment to the office in accordance with the provisions of said act of 1873 is valid.

(Argued April 5, 1876; decided May 23, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of defendant, entered upon a verdict.

This action was in the nature of a *quo warranto* to determine the title to the office of commissioner of jurors.

The relator was appointed to that office May 31, 1864, under the provisions of the act creating it (chap. 495, Laws of 1847), and continued to act until displaced by defendant, who was appointed July 22, 1875, under the provisions of the city charter of 1873. (Chap. 335, Laws of 1873.) Further facts appear in the opinion.

*A. Oakey Hall* for the appellant. The act of 1873, under which the respondent was appointed, was violative of section 16, article 3, of the Constitution. (*People ex rel. Rochester* v. *Briggs*, 50 N. Y., 558; *Harris* v. *People*, 59 id., 602.)

*Wm. M. Evarts* for the respondent. The title to the charter of 1873, under which defendant was appointed, was sufficiently comprehensive. (*People* v. *Comrs. of Taxes*, 47 N. Y., 501; *Huber* v. *People*, 49 id., 132; *Sullivan* v. *Mayor*, 47 How. Pr., 491.)

ANDREWS, J. The office of commissioner of jurors, the title to which is in controversy in this action, was created by chapter 495 of the Laws of 1847, entitled "An act in relation to jurors in the city of New York."

The general purpose of the act, as its provisions indicate, was to provide a system for ascertaining the persons liable to perform jury duty in the city of New York, and for distributing the jury service, and enforcing its performance in aid of the administration of justice by the courts of general and local jurisdiction therein.

Prior to the act of 1847, the mode of selecting jurors in the city of New York was regulated by the Revised Statutes. Each ward was deemed a town for the purpose of returning jurors, and the statute imposed upon the common council the

duty to " provide by ordinance the manner in which, and how often, the selection [of jurors] should be made, and the officers and persons by whom it shall be conducted." (2 R. S., 413, § 31.) The common council, in pursuance of the authority and duty thus given and imposed, appointed and designated the assessors of the several wards to prepare the lists of jurors, and when prepared they were returned to the county clerk, and the subsequent proceedings were had in accordance with the general law of the State upon the subject. (Corporation Ordinances [edition 1845], § 22.) The provisions of the Revised Statutes for the selection and return of jurors for the city of New York were not new in imposing upon the common council the duty of providing for the return of the jury lists. The same provisions, in substance, were contained in the Revised Laws of 1813, as modified by the act of 1825. (1 Revised Laws, 329, § 13; Laws of 1825, 131, § 1.)

The act of 1847 made a radical change in the mode of selecting jurors for the city of New York. By the second section it was provided that there should be a commissioner of jurors to be appointed by the supervisors of the city, the judges of the Superior Court, and the judges of the Court of Common Pleas. The act made it the duty of the commissioner of jurors to prepare jury lists, containing the names of persons subject to jury duty in the city; to hear and determine claims for exemption, and when the jury lists were completed, to return them to the county clerk, and certain powers were vested in him in respect to the imposition and remission of fines upon defaulting jurors, which had theretofore been exercised by the courts. The fines collected were to be paid into the county treasury, and the supervisors were directed (§ 11) to allow the commissioner out of the fines, etc., a reasonable compensation, and to provide him (§ 12) with books, stationery and a suitable room for an office. He was required (§ 2) to execute to the mayor, aldermen and commonalty, an official bond in the penalty of $5,000, to be approved by the mayor.

It will be seen from this reference to the provisions

of the act, that the commissioner of jurors, succeeded to the power theretofore vested in ward assessors under the ordinance of the common council in respect to the preparation of jury lists, but the act had a broader scope, and aimed, by concentrating powers and duties which had before been distributed between the local officers and the courts, in a single person, to establish a more complete and efficient administrative system for the regulation of the jury service in the city. Another act upon the same subject is chapter 539 of the Laws of 1870. It contains many additional provisions in furtherance of the general purpose of the act of 1847. It provides for a fixed salary to the commissioner of jurors, and directs that it shall be paid by the comptroller of the city (§ 17) and the commissioners of taxes, the commissioners of police, and all other officers of the city are directed (§ 13) to render all the assistance in their power to enable the commissioner of jurors to procure the names of persons liable to jury duty.

The relator, in May, 1864, was appointed commissioner of jurors by a convention composed of the judges of the Superior Court and Court of Common Pleas, and the supervisors of the city, and entered upon the discharge of the duties of the office, and continued to act as commissioner until July 22, 1875, when the defendant, upon the nomination of the mayor, and the confirmation of the board of aldermen, acting under the authority of an act entitled "An act to reorganize the local government of the city of New York," being chapter 335 of the Laws of 1873, was appointed commissioner of jurors. By the twenty-fifth section of that act it is provided that "the mayor shall nominate and, by and with the consent of the board of aldermen, appoint the heads of departments and all commissioners, * * * and also members of any local board, and all other officers not elected by the people, including the commissioner of jurors."

The defendant assumed to act as commissioner of jurors under his appointment, and has ever since remained in possession of the office. No question is raised as to the regularity of his appointment under the act of 1873; and his title

to the office is challenged on the single ground that the provisions of the act vesting the power of appointment of commissioner of jurors in the mayor and aldermen is in conflict with section 16 of article 3 of the Constitution, in that the subject of the appointment of a commissioner of jurors is not a subject expressed in the title. The more specific ground upon which the objection is based is, that the commissioner of jurors created by the act of 1847 was a county officer, and that a change in the mode of appointment could not constitutionally be made by an act which, by its title, relates to a reorganization of the city government of the city of New York. The body of the act of 1873 deals with the corporate powers of the city, and, in substance, is a revision of the city charter, and the title indicates that this was the subject of the enactment. If the legislature, in enacting a city charter, should undertake therein to prescribe the mode of appointment of an officer whose character as a county officer was indelibly fixed by constitutional provision, there would be much reason for claiming that the act, in this respect, would violate the constitutional provision referred to. The subject of the appointment of a county officer would not be understood as being comprehended within the title of an act which related to the powers and functions of a city government. It would be another and distinct subject, and one not expressed in the title.

The act of 1847 creating the office of commissioner of jurors did not, in terms, make it a county office; and neither the mode of appointment or the functions which the officer was to exercise made him distinctively a county officer. The power of appointment was vested in the persons who at the time were supervisors of the city, acting in conjunction with the judges of two of the local courts; but the supervisors, in exercising the power conferred, did not act as a board in their corporate capacity, but as individual officers clothed by the legislature, in connection with the judges, with a specific authority. It may be observed, also, that the supervisors were at the same time the aldermen of the city. Nor did the

commissioner of jurors succeed to powers which had thereto-fore been exercised by an officer of the county of New York. The selection of jurors by the general law of the State had always been committed to town as distinguished from county officers, and, as has been shown, in the city of New York this duty had, for a long time prior to the act of 1847, been per-formed by the common council, or by officers acting under its direction, and the other authority and functions with which the commissioner of jurors was invested by the act had not before been possessed or exercised by county officers. The jury lists, which the commissioner was directed to prepare, were to be made up from the whole body of the citizens of the county of New York liable to jury duty, but this was equally true of the lists which, before the act was passed, were prepared by the ward assessors. We have referred to the provisions in the act of 1847, requiring the commissioner to execute an official bond to the city, and to the fact that by the act of 1870, his salary was to be paid by the city comptroller, and also to the provision requiring the city officers to aid him in procuring the names of persons liable to serve as jurors. These provisions indicate that the legislature did not, in creating the office of commissioner of jurors, have in view the creation of a county, as distinguished from a city, office.

We have thus far assumed the proposition stated by the learned counsel of the relator to be true, viz., that if the commissioner of jurors appointed under the act of 1847 is to be regarded as a county officer, the legislature could not, in an act for the reorganization of the city government, make him a city officer and change the mode of appointment. But we do not assent to this view. The act of 1847 created a new office and provided for the appointment, by local authorities, of an officer to discharge its duties. These duties were local and concerned the interests of the people within the territory of the county of New York, but this population and territory were identical with those of the city of New York. It was competent for the legislature to make it a city or county office, and to vest the power of appointment in city or county

authorities. Assuming that the commissioner of jurors, as constituted by the act of 1847, was a county officer, the legislature, by acting, lost none of its authority over the subject. It could thereafter abolish the office, or change its character from a county to a city office, and provide for a different mode of appointment. The whole subject was within the control of the legislature. What the legislature could have done originally, it could do by a subsequent enactment.

The act of 1873 vested the power of appointment of commissioners of jurors in the mayor and common council. This made it distinctly a city office, whatever may have been its previous character. The title of the act was notice that the legislature were dealing with the general subject of the municipal powers of the city of New York, and whatever powers were conferred by it upon the city government were comprehended in the general subject expressed in the title, viz., the reorganization of the local government of the city of New York.

In view of the anomalous relation existing between the city and county of New York, there is no incongruity in committing to the city government and to officers appointed by the city authorities, control of the subject of selecting and returning jurors, within the territory of the city and county, and certainly there is no defect of legislative power to provide that the jury system should be administered by city officers.

It is for the legislature to distribute the powers of local government, as between the city and county governments, as it may deem best, and this discretion, when not restrained or excluded by some provision of the Constitution, is absolute, and no such provision, applicable to the matter under consideration, exists.

We are of opinion that the subject of the appointment of a commissioner of jurors was embraced within the general subject expressed in the title of the act of 1873, and that the defendant was legally appointed to that office.

The judgment of the General Term should, therefore, be affirmed.

All concur. Folger, J., absent.

Judgment affirmed.