In the Matter of the Application of THOMAS ALLISON, as Commissioner of Jurors in the County of New York, Appellant, to Compel the Delivery to him of the Books and Papers Belonging to Such Office and Now in Possession of CHARLES WELDE, Respondent.

172    421
d 78 AD 203

NEW YORK (COUNTY OF), COMMISSIONER OF JURORS IN — CHAPTER 602 OF LAWS OF 1901 AUTHORIZING APPOINTMENT OF, BY APPELLATE DIVISION NOT VIOLATIVE OF SECTION 2 OF ARTICLE 10 OF CONSTITUTION.   Chapter 602 of the Laws of 1901, providing "for the appointment of a commissioner of jurors in each county of the state having a population of one million or more, according to the last preceding census, who shall be appointed by the justices of the Appellate Division of the Supreme Court in the department in which such county is situated, or a majority of them," which conflicts with and repeals prior statutes creating and providing for a commissioner of jurors in the city of New York, does not violate section 2 of article 10 of the Constitution, providing that "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose.   All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."   The act is a valid exercise of legislative power, because it abolishes the office of commissioner of jurors of the city of New York, which office, not having been provided for by the Constitution, the legislature had the power to abolish, and, so far as the county of New York is concerned, creates a new office after the adoption of the Constitution, viz., a commissioner of jurors of. the *county* of New York, whose functions are to be exercised therein, not in the city, and whose expenses and compensation are made a county charge; the office, therefore, may be filled by election or by appointment in such manner "as the legislature may direct."   Such legislation is justified by reason of the enlargement of the city so as to embrace other counties than the county of New York, and it is for the legislature to distribute the powers of local government, as between the city and the county governments, as it may deem best, and this discretion, when not restrained or excluded by some provision of the Constitution, is absolute.

*Matter of Allison* v. *Welde,* 72 App. Div. 629, reversed.

(Argued October 7, 1902; decided November 18, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 27, 1902, which affirmed an order of Special Term denying an application for the delivery of books and papers made pursuant to section 2471a of the Code of Civil Procedure.

The facts, so far as material, are stated in the opinion.

*Albert B. Boardman* for appellant. The appellant is a county officer. (*Matter of Brenner*, 67 App. Div. 375; 170 N. Y. 185.) Prior to the act of 1901 there never was in the county of New York any such county officer as a commissioner of jurors. Not only is the petitioner the first county officer who has ever been called commissioner of jurors in the county of New York, but he is the first county officer who has ever been authorized to exercise the functions, or any of the functions, of commissioner of jurors therein. (*People ex rel.* v. *Dunlap*, 66 N. Y. 162; *Taylor* v. *Mayor, etc.*, 67 N. Y. 87.) The legislature at all times has had, and now has, the power to make the office of commissioner of jurors either a city or county office. If the duties of commissioner of jurors have been performed by a city officer, his office may be abolished by the legislature at any time, and the office of a county commissioner of jurors may be created. (*People ex rel.* v. *Dunlap*, 66 N. Y. 162.) The office now filled by the petitioner is a new office, which did not exist at the time of the adoption of the Constitution of 1894; and being a new office there is no constitutional inhibition against its being filled in such manner as the legislature may direct. (*People* v. *Draper*, 15 N. Y. 532; *W. W. Mfg. Co.* v. *Shanahan*, 128 N. Y. 345; L. 1873, ch. 613; L. 1874, ch. 329; L. 1895, ch. 934; *People ex rel.* v. *Bd. of Suprs.*, 147 N. Y. 1; *McGrath* v. *Grout*, 171 N. Y. 7; *Adams* v. *E. R. S. Inst.*, 136 N. Y. 52; Const. of N. Y. art. 10, § 2; *People* v. *Pinckney*, 32 N. Y. 377; *Fire Dept.* v. *Steamship Co.*, 106 N. Y. 566.) Chapter 602 of the Laws of 1901 was not passed for the purpose of evading the Constitution. (*People* v. *Hall*, 169 N. Y. 184; L. 1896, ch. 378, § 19; L. 1901, ch.

602, § S.)   The office of commissioner of jurors under chap-
ter 602, Laws of 1901, is a county office.   Prior to the passage
of that act it was not a county, but was either a city office
or an office of two boroughs together, Manhattan and the
Bronx.   (*Matter of Brenner*, 170 N. Y. 185 ; *People ex rel.*
v. *Dunlap*, 66 N. Y. 162 ; *Taylor* v. *Mayor, etc.*, 67 N. Y.
87.)   The distribution of the functions of local government,
as between city and county governments, is within the abso-
lute power and discretion of the legislature, except where the
function is by constitutional provision vested in a city or
county officer, and a change by the legislature of an office or
function from a city to a county government is not a mere
change in name, but is legally a fundamental and substantial
change.   (*People ex rel.* v. *Taylor*, 66 N. Y. 162 ; *Taylor* v.
*Mayor, etc.*, 67 N. Y. 87 ; *Matter of Brenner*, 170 N. Y.
192 ; *McGrath* v. *Grout*, 69 App. Div. 314 ; *People* v.
*Draper*, 15 N. Y. 532.)   This court will not hold an act of the
legislature unconstitutional unless it violates the prohibitions
of the Constitution in express words or by necessary implica-
tion.   Mere inference or analogy will not suffice as grounds
for declaring an act unconstitutional.   (*People* v. *Draper*, 15
N. Y. 532 ; *W. W. Mfg. Co.* v. *Shanahan*, 128 N. Y. 345 ;
*People ex rel.* v. *Dunlap*, 66 N. Y. 162 ; *Taylor* v. *Mayor,*
etc., 67 N. Y. 87 ; *People* v. *Pinckney*, 32 N. Y. 392.)

*Robert H. Elder* for respondent.   At the time the present
Constitution went into effect, and at the time of the enact-
ment of chapter 602 of the Laws of 1901, the office of the
commissioner of jurors was "distinctly a city office" of the
city of New York.   (L. 1873, ch. 335, § 25 ; *People ex rel.*
v. *Dunlap*, 66 N. Y. 162, 168 ; *Taylor* v. *Mayor*, 67 N. Y. 87,
93.)   By chapter 602 of the Laws of 1901, the legislature did
not change the character or scope of the functions and duties of
this office, and did not abolish the office, but left them sub-
stantially as they existed theretofore.   (L. 1901, ch. 602 ;
Code Civ. Pro. § 1089 ; *People* v. *Dunn*, 157 N. Y. 528 ;
*Matter of Brenner*, 170 N. Y. 185.)   Section 2 of article 10

of the Constitution has preserved to the cities and other localities of the state the control of all the official functions of which they were possessed when the Constitution went into effect. (*Devoy* v. *City of New York*, 36 N. Y. 449; *People* v. *Raymond*, 37 N. Y. 428; *People* v. *Pinckney*, 32 N. Y. 377; *People* v. *Albertson*, 55 N. Y. 51; *Board of Health* v. *Heister*, 37 N. Y. 665; *People* v. *Draper*, 15 N. Y. 532.) Chapter 602 of the Laws of 1901 seeks to vest in a state authority control of functions preserved by the Constitution to the people of Manhattan and the Bronx, and therefore violates section 2 of article 10 of that document. (*Matter of Brenner*, 170 N. Y. 185.)

HAIGHT, J. On the 10th day of April, 1902, Thomas Allison, the appellant, was appointed commissioner of jurors for the county of New York by the justices of the Appellate Division of the department in which that county is located. He thereupon qualified by taking the oath of office required by the Constitution, and then demanded of Charles Welde, who was in possession of the books and papers belonging or pertaining to the office, the possession thereof, which demand was refused upon the ground that chapter 602 of the Laws of 1901, under which Allison had been appointed, was unconstitutional, and, therefore, void.

The statute in question became a law on the 22d day of April, 1901. It provided that there should be a commissioner of jurors in each county of the state having a population of one million or more, according to the last federal census, who shall be appointed by the justices of the Appellate Division of the Supreme Court in the department in which the county is situated, or by a majority of them. The act also contains specific provisions defining the power and duties of the commissioner, and then concludes by repealing all special or general laws inconsistent with the provisions of the act.

The office of commissioner of jurors in the city of New York was first created by the Laws of 1847, chapter 495. Under the provisions of that act, supervisors of the city, justices

of the Superior Court and the justices of the Court of Common Pleas of the county were required to appoint the commissioner, whose powers and duties were specified by the other provisions of the act. In 1873, by chapter 335, section 25, entitled "An act to reorganize the local government of the city of New York," it was provided that the mayor shall nominate, and, by and with the consent of the board of aldermen, appoint the commissioner of jurors. Subsequently, the consent of the board of aldermen was dispensed with, and the power to appoint the commissioner was vested in the mayor alone (Laws of 1884, chapter 43), and this power of appointment by the mayor was continued in section 118 of the Greater New York charter, under which Welde was appointed commissioner and claims the right to hold the books and papers pertaining to the office.

It is claimed on the part of the respondent that the revised charter of 1873, giving the appointment of the commissioner of jurors to the mayor, with the approval of the board of aldermen, constituted the office a city office, and that it has remained such ever since; that the act of 1901 did not change the character, scope or functions of the office, and that it did not abolish it, and that it is in conflict with the provisions of article 10, section 2, of the Constitution, which, it is claimed, has preserved to the city and other localities of the state local self-government, and the control of all the official functions of which they were possessed when the Constitution went into effect; that the only way this control can be taken away is by abolishing the office, etc.

The provision of the Constitution referred to by the respondent, which will be necessary to consider upon this review, is as follows: "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose

offices may hereafter be created by law, shall be elected by the people, *or appointed, as the Legislature may direct.*"

The office of the commissioner of jurors is not a constitutional office, and the Constitution contains no provision with reference to the election or appointment of this officer. The office, therefore, if made a city office must be filled by an election by the electors of the city or appointed by some authority thereof, unless it is an office created after the adoption of the Constitution, in which case it must be filled by election or by appointment in such manner "*as the legislature may direct.*" The legislature, however, may abolish a city office as unnecessary unless it is a constitutional office ; and even if some of the functions of the office are necessary for the welfare of the municipality, these functions may be devolved upon other city officers. The object and purpose of the provision of the Constitution is to secure to the civil divisions of the state the right of local self-government, and the courts will not permit an evasion of this constitutional right by a change in the name of the office, or a division of the duties thereof under different names, or by the appointment of the officer in a different manner than that authorized by the Constitution. (*People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50.)

Returning to a consideration of the provision of the act of 1901, we find that it is a general act applying to all of the counties in the state having a population of one million at the last federal census. It, therefore, applied to the county of New York. The power and duties of the commissioner when appointed are limited to the county. He is required to make up a list of persons to serve as jurors in the courts of the county, and these jurors are selected from the residents of the county. His salary and expenses are made a county charge instead of a city charge, and then, as we have seen, the act concludes by repealing all special and general laws inconsistent therewith.

Confessedly the prior existing acts with reference to the commissioner of jurors in the city of New York are in conflict with the provisions of this act, and if it is not violative

of the provisions of the Constitution these acts by its provisions stand repealed, and the office of commissioner of jurors of the city of New York is abolished. But it is said that the functions of the office remain substantially the same. The answer to this contention is that prior to the adoption of this statute there was no such office for the county of New York. It is true that at one time there was such an office in the city of New York, and at that time the city covered the same territory as that of the county. But that time has passed. The city now embraces the whole of three counties and a portion of two others. Each of the other counties included in the city have the selection of their jurors provided for under other statutes and by other means. The mayor of the city is elected by the electors thereof. The people of the other counties and localities embraced within the city have a voice in his selection. They, therefore, through that officer whom they select, take part in the appointment of the commissioner of jurors for this county. In this way the electors of this county are compelled to submit to the choice made by others residing in other counties, and have their office of commissioner of jurors filled by others than themselves. This is not local self-government.

In the county of Kings there is another statute for the selection of jurors under which there is a commissioner of jurors, a deputy, clerks, a stenographer and messenger. The salaries and expenses are made a county charge. The people of that county are taxed and have to pay these expenses, and should they also be taxed to pay the expenses of the jury system in the county of New York for the reason that the commissioner of jurors in that county is a city officer? Is this just to the people of the county of Kings? In the counties of Richmond, Queens and Westchester other jury systems are in force for which the people of those counties have to pay. Should the people of these counties, who reside within the limits of the city, be also required to pay for the jury system in the county of New York? Is this just to these people, and has the legislature no power to provide a

remedy? Such in effect is the contention of the respondent. The functions of the office of a jury commissioner cannot well be dispensed with; and he contends that there can be no change made without abrogating the functions of the office.

The situation here presented has recently been condemned by this court in the case of *People* v. *Dooley* (171 N. Y. 74, 84). In that case the legislature had authorized the electors of the county of Kings to elect their own magistrates. Under the charter of the city of New York they were to be appointed by the mayor. In considering that situation WERNER, J., says: "Under the original plan each elector who exercised his right of franchise had an equal part in the selection of all the magistrates, through his vote for the mayor who appointed them. In the present situation the electors of the borough of Brooklyn have the right, in common with the electors of the borough of Manhattan, to vote for the mayor who appoints the magistrates in the first division; and also to vote, both by district and at large, for the magistrates in their own borough, although the right is denied to the electors of the first division." These views were indorsed by a majority of this court and every word applies forcibly to the situation we have presented in the case under consideration. The electors of the borough of Brooklyn had the right, in common with the electors of all the other boroughs included in the city, to vote for the mayor who appoints a jury commissioner in the borough of Manhattan. The electors of all the boroughs, other than Manhattan, also have the right to vote for the officers who select their jurors, thereby denying the right to the electors of Manhattan to choose their own officer for the performance of this function.

We think there is a remedy for these evils; that the legislature has the right to distribute the powers of local government, as between the city and county governments, as it may deem best; and that there is no provision of the Constitution which limits the power of the legislature in this regard. This, we think, was settled by the decision of this court in the case of *People ex rel. Taylor* v. *Dunlap* (66 N. Y. 162). In that

case the same statutes were under consideration, except the last one, which we have in this case. In that case a commissioner of jurors appointed under the provisions of the charter claimed the office from the commissioner appointed under the act of 1847. It was then contended that the office of commissioner, as created by the act of 1847, was a county office, and that the office could not be changed to a city office. In this case it is now contended that it is a city office and cannot be changed to a county office. ANDREWS, J., in delivering the opinion of the court, says that the act of 1847 did not constitute the office a county office, but he also shows that it made no difference with the result if it were a county office, for he says, " Assuming that the commissioner of jurors, as constituted by the act of 1847, was a county officer, the legislature, by acting, lost none of its authority over the subject. It could thereafter abolish the office, or change its character from a county to a city office, and provide for a different mode of appointment. The whole subject was within the control of the legislature. What the legislature could have done originally, it could do by a subsequent enactment. * * * It is for the legislature to distribute the powers of local government, as between the city and the county governments, as it may deem best, and this discretion, when not restrained or excluded by some provision of the Constitution, is absolute, and no such provision, applicable to the matter under consideration, exists." If the legislature had the power to change the office from a county office to a city office, it would seem to also have the power to change it back again.

There is another consideration which may properly have influenced legislation upon this subject, and that is public policy. Complaints have not been uncommon to the effect that in some localities the jury lists have been made up almost exclusively of persons belonging to one of the great political parties. If there is any branch of the department of the government that ought to be strictly non-partisan, it is the jurors to whom is committed the determination of the rights of persons to life, liberty and property. Recognizing this,

the legislature in its wisdom has seen fit, by general laws, to provide for the appointment of commissioners of jurors in a number of the counties of the state in which there are large cities, and has given the appointment of such commissioners to the justices of the Appellate Division of the district in which the county is located, believing that the rights of persons would be safer and more scrupulously guarded by the justices of such courts who would see to it that impartial jurors were selected, than by any other board or officers to whom the appointment could be committed. The judiciary of the state forms one of the co-ordinate branches of the government. The statutes provide for the holding of the courts in the different counties of the state for the trial of civil and criminal cases that may arise in such localities. The jurors, when drawn, become a part of the court having governmental duties to discharge. It would seem, therefore, to be good public policy for the state in some measure to retain some control over positions of this character. If these considerations are good public policy in other parts of the state, we see no reason why they should not be in the county of New York.

The act of 1901 was passed after the adoption of the Constitution of 1894. It creates the office of commissioner of jurors in every county having the required population, which includes the county of New York. It is, therefore, a new office within the meaning of the provisions of the Constitution which we have under consideration, and, therefore, it may be filled by appointment in such manner "as the legislature may direct."

Again, in the case of *People ex rel. Taylor* v. *Dunlap*, it was distinctly held that the act of 1847 created a new office, and that under the Constitution it could be filled in such manner as the legislature should direct. It is contended, however, that although it was a new office at that time and so continued down until 1894, by the adoption of the new Constitution of that year it became an old office and could not thereafter be filled "as the legislature may direct." But the provisions of article 10, section 2, of the Constitution, of 1894 are copied word for word from article 10, sec-

tion 2, of the Constitution of 1846. Section 32 of the Statutory Construction Law provides that " The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, and not *as new enactments.*" It is true this provision by its terms has reference to the construction of statutes. The Constitution is a higher law adopted by the people, and the legislature may have no power to repeal, amend or construe its provisions. The power to construe the Constitution devolves upon the courts, and the courts in construing its provisions are not controlled by any act of the legislature. But the provisions of this act are but declaratory of the rule previously laid down by the courts in numerous cases. (*Ely* v. *Holton*, 15 N. Y. 595 ; *Matter of Prime*, 136 N. Y. 347–353 ; *Laude* v. *Chicago & N. W. R. Co.*, 33 Wis. 640 ; *Gilkey* v. *Cook*, 60 Wis. 133 ; *Blackwood* v. *Van Vleit*, 30 Mich. 118.)

The same rule applies to the construction of constitutions. Cooley in his work on Constitutional Limitations, at page 76 (6th ed.), says " Where a constitution is revised or amended, the new provisions come into operation at the same moment that those they take the place of cease to be of force ; and if the new instrument re-enacts in the same words provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in those particulars, *but to continue it in uninterrupted operation.* This is the rule in the case of statutes, and it sometimes becomes important, where rights had accrued before the revision or amendment took place. Its application to the case of an amended or revised constitution would seem to be unquestionable." If this were not so, many of the new offices created under the Constitution of 1846 in the different localities of the state would, upon the adoption of the Constitution of 1894, become inconsistent with its provisions herein referred to ; for by its provisions it continued in force existing laws only, which were not inconsistent with its provisions. (See, also, Black on Interpretation of Laws, page 32, and authorities cited thereunder.)

It follows, therefore, that the Constitution of 1846 having been continued by the Constitution of 1894 in *hæc verba*, so far as these provisions are concerned, it is deemed to be a continuation of the provision from the time of its first enactment in 1846; and the offices that were new thereunder still continue to be new offices, which may be filled "as the legislature may direct." The creation of the office of the commissioner of jurors in the city of New York being a new office under the Constitution of 1846, still continues such and may be filled "as the legislature may direct."

In *Matter of Brenner* (170 N. Y. 185) a very different question was presented. That case was unique, and was so considered by the court at the time the decision was rendered. O'BRIEN, J., who delivered the opinion, says with reference to it: "It may be that the conditions in the county of Kings with respect to this office when the Constitution took effect were exceptional, in that the office had been made a county office by statute many years before, and hence the views here expressed apply only to such a case as is presented by this record."

It follows that the provisions of the act of 1901, so far as the county of New York is concerned, are not in conflict with the provisions of the Constitution.

The order of the Appellate Division and Special Term should be reversed and the motion granted, with costs in all the courts.

PARKER, Ch. J. (dissenting). The third Appellate Division unanimously affirmed an order of Special Term denying an application of Thomas Allison, as commissioner of jurors in the county of New York, for an order compelling the delivery to him of the books and papers appertaining to such office, and now in the possession of Charles Welde. The ground for the decision was that chapter 602 of the Laws of 1901, in so far as it attempts to confer upon the justices of the Appellate Division of the Supreme Court in the first department power to appoint a commissioner of jurors in and for

the county of New York, offends against § 2 of article 10 of the Constitution, and is, therefore, void.

This decision seems to be justified by the language of the Constitution, and it is certainly required by the decision of this court in *Matter of Brenner* (170 N. Y. 185), which affirmed the position unanimously taken by the same Appellate Division. The *Brenner* case considered the same statute, one of a series of enactments upon our statute books, made general in form in order to avoid offending against a very different constitutional provision than that now before us, but in substance and spirit special, and entitled " An act to provide for the appointment of a commissioner of jurors and to provide for a special jury in civil and criminal actions in each county of the state having a population of one million or more, according to the last preceding federal census." (Ch. 602, Laws of 1901.) In effect, therefore, the act provided for commissioners of jurors for the counties of New York and Kings. The justices of the Appellate Division of the first department. appointed this relator for the county of New York, while those of the second Appellate Division appointed Jacob Brenner for the county of Kings.

The question relating to Brenner's appointment came first to this court, where it was decided that the office of commissioner of jurors in the county of Kings was, at the time the Constitution of 1894 went into effect, a county office, and that chapter 602 of the Laws of 1901 transferred the power of appointment from the local authorities to the justices of the Appellate Division of the Supreme Court in the second judicial department, which is a state authority, and so that act violated § 2, article 10 of the Constitution, which in terms restricts the power of the legislature to appoint to existing local offices, or to provide for appointment thereto by central or state authority.

The only differences between the *Brenner* case and this one are that in the *Brenner* case the appointment was made by the justices of the Appellate Division in the second department, while in this case it was made by the justices of that

28

court in the first department, and in the *Brenner* case the office of commissioner of jurors in the county of Kings at the time chapter 602 of the Laws of 1901 went into effect was a county office, while in New York it was a city office in name, the county and city territorially being the same. Therefore, chapter 602 attempted to continue in the county of Kings a county office as such, but in New York to continue an office by law termed a city office as a county office — certainly not a change of substance, but a change in name only.

The statement already made, that the decision in the *Brenner* case required the decision made by the Appellate Division in this one, needs no other support than the brief analysis I have made of the so-called distinguishing features.

I should omit further discussion, inasmuch as the *Brenner* case carefully considers every proposition involved, were it not that a suggestion has been made which perhaps should not be allowed to pass unnoticed.

It is said this court may hold that a new office has been created, and, therefore, the legislature has power to provide not only the method of appointment, but to provide that it may be made by other than local authority. Stated in other words, the position is that — while there was a commissioner of jurors exercising the functions of that office within the territory of New York, and the act under consideration provides for the exercise of similar functions within the same territory — nevertheless it may and should be called, by courts charged with the responsibility of preventing violations of the Constitution, a new office. If such a decision were possible it would open a very convenient avenue for defeating the will of the people as expressed in the constitutional provision under consideration; but this court closed the door against any scheme looking toward the undermining of this constitutional provision, and depriving it of the power of accomplishing the result intended, in *Devoy* v. *Mayor, etc., of New York* (36 N. Y. 449). To that and to the cases following it reference will be made.

In *Devoy's* case the question decided was whether the clause

in the act of the 15th of April, 1857, transferring to the met-
ropolitan police board the power to appoint clerks to the
police courts of New York, was unconstitutional and void,
that power having been long prior to the act vested in the
mayor and board of aldermen. The clause was held to be
unconstitutional, this court saying: " Our views on this sub-
ject were expressed with great clearness by Judge DAVIES,
who delivered the opinion of the court in the case of the
*People* v. *Pinckney.* 'It is manifest that the officer to be
appointed, to be within the power reserved to the legislature,
must be an officer of the new district or division, and not
merely local in the scope and performance of his duties and
functions, and therein superseding some existing local officer.
He must be a district officer, in the sense of his functions and
authority, and not merely in name, with no powers and duties
beyond a previously organized locality.' (32 N. Y. 382.)
Our public statutes furnish conclusive evidence that the office
of police clerk, in the city of New York, is not a new crea-
tion of the lawmaking power. It existed long before the Con-
stitution, and there has been no substantial change, either in the
official title or in the functions and duties of the incumbent."

In *People* v. *Raymond* (37 N. Y. 428) it was held not to be
competent for the legislature to create a new office, and vest
the power of appointment in the governor and senate when
the duties were the same as those of a former county officer
made elective by the Constitution. The decision is in point
as to the question now being considered, and a portion of the
argument contained in the opinion, written by Judge GROVER,
in which all of his associates concurred, can with propriety be
referred to in connection with the discussion of the sugges-
tion that a new office has been created. Judge GROVER said:
" The plain intention of the section of the Constitution in
question was to preserve to localities the control of the official
functions of which they were then possessed, and this control
was carefully preserved, consistent with the power of the
legislature to make needful changes, by restricting the power
of appointment of other officers to perform the same func-

tions, to the people, or some authority of the locality.   Any
other construction would render the section in question, when
applied to the cities of the state, substantially nugatory."

Here we have the key to the real meaning of this provision
of the Constitution, which is, that the functions of local offi-
cers are to remain within the control of the local authorities.
The Constitution did not aim at such a useless thing as pre-
serving local control over an officer enjoying an ancient offi-
cial title without its functions, while other officials appointed
by other than local authority, under a new name, performed
the duties which properly belonged to his office, and it has
not been claimed that such was the intent of the constitutional
provision since the case of *People* v. *Raymond* in any reported
case in the state.

It was followed in *Metropolitan Board of Health·*v. *Heister*
(37 N. Y. 661), in which the court said, after quoting the con-
stitutional provision : "This provision has been before this
court on several previous occasions, and certain positions in
relation to it may be conceded as settled.   Its plain meaning,
that all the local officers referred to, whose offices were in
existence at the adoption of the Constitution, shall be elected
or appointed by local authorities of which they are the repre-
sentatives, has been fully sustained.  · So it has been held, that
to change the name, or to divide up and partition the duties
among several, or to take parts of the duties of several officers
and combine them in one, will not be permitted.   If the offices
in question are county or city offices, and were in existence at
the adoption of the Constitution of 1846, it is not competent
to vest the appointment of incumbents in the governor and
senate.   It belongs exclusively to the local power to fill the
offices, either by election or by appointment, as the legislature
may direct."

In *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50) the court
took under consideration an act to create the Rensselaer police
district, which provided for the establishment of a police force
for the city of Troy and certain fragments of territory outside
of the city limits.   The act was held to violate the provision

of the Constitution involved in this case, the object of which is, the court said, to secure to the several recognized civil and political divisions of the state the right of local self-government, and this right cannot be taken from them, and the incumbents disfranchised, by any acts of the legislature or any or all departments of the state government combined. The spirit with which a court should approach the consideration of a challenge of a statute, as offending against the constitutional provision in question, is clearly presented in the court's holding, that a thing within the intent of a constitutional enactment is for all purposes to be regarded as within the words and terms of the Constitution, and a legislative enactment evading the terms and frustrating the general and clearly expressed or necessarily implied purposes of the Constitution is as clearly void as if in express terms forbidden. In the course of the opinion the court said : " The Constitution cannot be evaded by a change in the name of an office, nor can an office be divided and the duties assigned to two or more officers under different names, and the appointment to the offices made in any manner except as authorized by the Constitution ; and courts will scrutinize acts of the legislature and see that the Constitution is not evaded and its intent frustrated by a mere colorable change in the designation and title or the duties of an officer, when the appointment is taken from the locality, and will hold the act void unless the change is real and substantial."

It follows from the authorities to which reference has been made that the test by which to determine whether the office be new or old is, Are the functions to be exercised by the new officers new or old ? If old, then the Constitution insists that the old control shall continue.

The order should be affirmed, with costs.

BARTLETT and VANN, JJ. (and WERNER, J., except as to the last ground stated in the opinion, as to which he expresses no opinion), concur with HAIGHT, J. ; O'BRIEN and CULLEN, JJ., concur with PARKER, Ch. J.

Order reversed, etc.