OPINION OF THE COURT
Joseph Jaspan, J.
The defendants are charged with 25 counts of manufacture of unauthorized recording of sound (Penal Law, § 275.05); 25 counts of advertisement and sale of unauthorized recording of sound (Penal Law, § 275.10); and 25 counts of failure to disclose origin of recording of sound (Penal Law, § 275.15).
*1053 The indictment alleges in substance that defendants engaged in a course of conduct in which they “pirated” and unlawfully marketed sound recordings.
The defendants now move to dismiss the indictment upon the grounds that the afore-mentioned sections of the Penal Law are unconstitutional since each of the charges is based upon an alleged violation of the copyright laws, an area which has been totally pre-empted by the Federal Government (US Const, art I, § 8, cl 8) and that in any event for chronological reasons the afore-mentioned statutes are barred by Federal statutes.
United States copyright protection was extended to sound recordings fixed after February 15, 1972 (Public Law 92-140; US Code, tit 17, § 1 et seq).
The term “fixed” is defined in section 101 of title 17 of the United States Code as follows: “A work is ‘fixed’ in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is ‘fixed’ for purposes of this title if a fixation of the work is being made simultaneously with its transmission.”
The recordings involved in the instant case were made by groups such as the Beatles, the Yardbirds, John Lennon, Led Zeppelin, the Rolling Stones and Blondie. All parties agree that the original master recordings were “fixed” on or before February 15, 1972 except that as to the Rolling Stones’ record (Count No. 16) where performers were not the Rolling Stones but some unnamed group and that as to the Blondie record (Count Nos. 17 and 18) the “pirated” recording was made from a November, 1978 radio broadcast and not from a previously fixed sound recording.
The threshold argument of defendant that the State is pre-empted from enacting or enforcing their so-called “piracy” statutes with respect to sound recordings is contrary to the holding in Goldstein v California (412 US 546).
*1054 In that case the California statute under attack was similar to New York legislation then found in sections 560 and 561 of the General Business Law. In upholding the constitutionality of the statute, the court wrote (p 571): “We conclude that the State of California has exercised a power which it retained under the Constitution, and that the challenged statute, as applied in this case, does not intrude into an area which Congress has, up to now, pre-empted. Until and unless Congress takes further action with respect to recordings fixed prior to February 15,1972, the California statute may be enforced against acts of piracy such as those which occurred in the present case.”
That opinion did not, however, reach the alternate challenge raised in this case. Defendant claims that since sections 275.05, 275.10 and 275.15 of the Penal Law upon which this indictment is based were enacted on June 19, 1978 (L1978, ch 445) it is barred by the specific provisions of section 301 of title 17 of the United States Code which reads in part as follows: “(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [Exclusive rights in copyrighted works] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 [Subject matter of copyright: In general] and 103 [Subject matter of copyright: Compilations and derivative works], whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State” (Emphasis supplied.)
Paragraph (2) of subdivision (b) specifies that title 17 does not annul or limit any rights or remedies under the common law or statutes of any State with respect to any cause of action arising from undertakings commenced before January 1, 1978.
Subdivision (c) provides that: “With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State *1055 shall not be annulled or limited by this title until February 15, 2047. The preemptive provisions of subsection (a) shall apply to any such rights and remedies pertaining to any cause of action arising from undertakings commenced on or after February 15, 2047. Notwithstanding the provisions of section 303, no sound recording fixed before February 15, 1972, shall be subject to copyright under this title before, on, or after February 15, 2047.” (Emphasis supplied.)
At issue is whether the afore-mentioned Penal Law sections created new rights and remedies not existing at the time of the enactment of section 301 of title 17 of the United States Code and thus rendered any recordings fixed prior to February 15, 1972 unprotected from counterfeiting under New York State law.
In 1967 the Legislature enacted sections 560 and 561 of the General Business Law which made it an unclassified misdemeanor to make an unauthorized copy of phonograph records to manufacture, distribute or sell phonograph records without the name and address of the manufacturer.
In 1978 it was decided that the crime of manufacturing of an unauthorized recording of sound should be elevated from a misdemeanor to a class E felony without change of the classification of crime as to the other acts prohibited by sections 560 and 561 of the General Business Law. Accordingly, the General Business Law statutes were re-enacted as separate Penal Law statutes whose sum amounted to a restatement of existing law in substantially the same form.
To accomplish this recodification the General Business Law statutes were repealed as of the effective date of the penal statutes.
Defendant urges that the Penal Law statutes are a new enactment barred by section 301 of title 17 of the United States Code since they become effective after January 1, 1978.
Section 95 of the General Construction Law provides that “[t]he provisions of a law repealing a prior law, which are substantial re-enactments of the provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, modified or amended according to the *1056 language employed, and not as new enactments.” (See, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 373.)
Thus, where the provision of a statute shows an intention to carry on and continue the statute upon which they were based, although it repeals the earlier act, the repealing clauses are treated simply as a part of the mechanics of statutory draftsmanship and in no way are to be treated as divorcing the new law absolutely from the old. (Matter of Allison v Welde, 172 NY 421; Robinson v County of Broome, 276 App Div 69, affd 301 NY 524.)
Moreover, any change in the language of a statute contained in a revision or consolidation of laws is usually looked on as an improvement in verbiage and not as a change in the law. In such circumstances, it is presumed that no change in the law was intended in the absence of a clear expression of a legislative purpose to effect such change (McKinney’s Cons Laws of NY, Book 1, Statutes, § 422).
The legislative intent to continue existing law as to the piracy of sound recordings is evident from the legislation itself and reaffirmed by the memorandum of Governor Hugh L. Carey dated June 19,1978 which reads in part as follows: “The bill transfers various provisions of article 29-D of the General Business Law, relating to the manufacture and sale of unauthorized sound recordings, to a new article 275 of the Penal Law. In addition to transferring these provisions to the Penal Law, the bill increases the penalty for the unlawful manufacture of sound recordings from a class A misdemeanor to a class E felony, and adds a new article 420 to the Penal Law for the seizure and destruction of unauthorized sound recordings and the forfeiture of equipment used in the production of such recordings.” (NY Legis Ann, 1978, p 262.)
The forfeiture provisions referred to are without significance in the instant case and not the subject of the constitutional challenge.
The change in the degree of a crime does not redefine or expand the prohibited acts nor impinge upon property rights.
*1057 Accordingly, this court rules that sections 275.05,275.10 and 275.15 of the Penal Law are extensions of the previously enacted General Business Law sections and not barred by the provisions of section 301 of title 17 of the United States Code.
Insofar as defendants’ motion challenges the constitutionality of these Penal Law sections, it is denied.
Upon motion of the defendants, I have inspected the Grand Jury minutes and find them legally sufficient to support the charges contained in the indictment including those relating to the record purported to have been made by the “Rolling Stones” (Count No. 16) and the unauthorized recording of a radio program performed by “Blondie” in November, 1978 (Count Nos. 17 and 18).
Count No. 16 charges that the defendants knowingly sold or offered for sale a phonograph record which was purportedly recorded by the Rolling Stones but which, in fact, was recorded by some unnamed group.
Section 275.15 of the Penal Law makes it a misdemeanor to offer a record for sale whose cover, box or jacket does not clearly disclose the manufacturer, name of the actual performer or group thereof.
This statute does not require that the recording be fixed. Violations thereof are therefore not pre-empted by the Federal copyright laws which require that the sound recordings be fixed on or after February 15,1972 (US Code, tit 17, §301).
Indeed, careful examination of section 275.15 establishes that it is not a copyright statute, but rather a consumer protection statute enacted to protect the public from purchasing records under a false belief that they were, in fact, recorded by the performer or group named on the record jacket.
This count is therefore sustained.
Count No. 17 charges violation of subdivision 2 of section 275.10 of the Penal Law, advertisement and sale of unauthorized recording of sound.
*1058 That subdivision states the crime is committed when the defendant “2. Knowingly advertises, or offers for sale or resale, or sells or resells, distributes or possesses for such purposes, any phonograph record, disc, wire, tape, film or other article embodying any performance, whether live before an audience or transmitted by wire or through the air by radio or television, recorded without the consent of the performer.” (Emphasis added.)
Under this subdivision there is no requirement that proof be offered that the recording has been “fixed”. In that respect it is distinguishable from the language in subdivision (1) which relates to the sale or distribution of a recorded article that has been produced without the consent of the owner. The count alleges a recording by defendants of a “live” performance without the consent of the performer. It need not be previously “fixed” as that term is defined, supra and even though the count relates to a November, 1978 event, it is not barred by subdivision (b) of section 301 of title 17 of the United States Code.
Count No. 18 charges violation of subdivision 2 of section 275.05 of the Penal Law which defines the crime of manufacturing of an unauthorized recording of sound as follows: “A person is guilty of the manufacture of an unauthorized recording of sound when he: 2. Knowingly, and without the consent of the performer, transfers to or causes to be transferred to any phonograph record, disc, wire, tape, film or other article, any performance, whether live before an audience or transmitted by wire or through the air by radio or television, with the intent to sell or cause to be sold for profit or used to promote the sale of any product, such article onto which such performance is so transferred.” (Emphasis addéd.)
As in Count No. 17 the evidence presented to the Grand Jury related to the defendants’ unauthorized recording and sale of a live performance. In fact, a witness representing the Blondie group testified that the subject performance was never produced as a record although the defendants by the label represented that it was so recorded.
Again, there is no requirement with respect to subdivision 2 of section 275.05 of the Penal Law that there be a *1059 fixation of the recording to trigger the commission of the crime charged. The evidence presented as to this count was also sufficient.